**DAVIS ENTERPRISES, Sun Pipe Line Company, Sun Company, Inc., E.A. Design, Ltd., Jan Gouza, Pickering, Corts & Summerson, Appellants,**

v.

**UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and Bruce Diamond.**

No. 88–1821.

United States Court of Appeals, Third Circuit.

Argued Feb. 6, 1989.

Decided June 27, 1989.

Rehearing and Rehearing In Banc Denied Aug. 8, 1989.

---

Donald E. Wieand (argued), Weaver, Mosebach, Piosa, Hixson, Wallitsch & Marles, Allentown, Pa., for appellant, Davis Enterprises.

Bruce J. Chasan, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., for appellants, Sun Pipe Line Co. and Sun Co., Inc.

B. Alan Dash, Margolis, Edelstein, Scherlis, Sarowitz & Kraemer, Philadelphia, Pa., for appellant, E.A. Design, Ltd.

Gary Gremminger, German, Gallagher & Murtagh, Philadelphia, Pa., for appellants, Jan Gouza and Pickering, Corts & Summerson.

Michael M. Baylson, U.S. Atty., James G. Sheehan, Asst. U.S. Atty., Chief, Civ. Div., Walter S. Batty, Jr., Asst. U.S. Atty., Chief of Appeals, Virginia Gibson–Mason (argued), Asst. U.S. Atty., Philadelphia, Pa., for appellees.

Before SLOVITER, BECKER, and WEIS, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

### I.

The appellants before us, Davis Enterprises *et al.*, who are the defendants in private civil litigation, sought permission from the Environmental Protection Agency (EPA) to take the deposition of an agency employee as a fact witness for use in refuting damage claims brought by homeowners as a result of a gasoline spill. The EPA refused, and Davis Enterprises *et al.* filed suit. The district court, on the basis of a stipulation as to the relevant facts, granted summary judgment for the EPA, holding that the EPA's decision was unreviewable and, alternatively, that even if the decision were reviewable, the EPA did not abuse its discretion.

### II.

This appeal arose as a byproduct of litigation over liability for an underground gasoline spill in Newtown, Pennsylvania. A contractor installing underground television cable punctured an underground petroleum pipeline owned and operated by one of the Appellants before us. Unleaded gasoline leaked from the puncture, and gasoline vapors entered the basements of homes in a nearby housing development. The homeowners filed a class action in a Pennsylvania state court. Homeowners who opted out of the class action have filed individual suits against Appellants, which are still pending. In the class action, the liability and damages phases were bifurcated, and Appellants were found liable for causing the spill. The state litigation is now in the damage phase, in which the homeowners must establish their individual damages.

After the incident, the homeowners, not wanting to rely on air quality tests performed at the behest of defendant Sun Pipe

Line Company (the owner of the pipeline), requested independent testing through the Pennsylvania Department of Health (DOH). The DOH arranged to have the tests performed by the EPA, and Theodore Erdman was one of the EPA employees who participated in the EPA's air monitoring process.

Appellants, who allege that the results of the EPA testing are favorable to their position that the homeowners suffered little or no damage, seek Erdman's testimony for use at trial on the homeowners' individual damages. They have received the results of the EPA's air monitoring in documentary form, but they claim that Erdman's testimony is necessary because the homeowners have refused to admit the truthfulness of the EPA results without the opportunity to cross-examine Erdman. Appellants assert the concern that the test results may not be admissible under the Pennsylvania law of evidence in light of the homeowners' objections.

It is not our function on this appeal to decide whether the EPA's reports are or are not admissible under Pennsylvania law absent Erdman's testimony. Appellants represented to us at oral argument that they requested an *in limine* ruling on the admissibility of the EPA data from the Pennsylvania trial court, but that court refused to make such a ruling. Of course, that determination, if favorable to Appellants, would have made this tangential federal litigation unnecessary and would have spared all parties the delay attendant to the federal courts' determination of the issue before us on appeal. For purposes of this appeal, we accept Appellants' representation that if they are unable to have the EPA results admitted, it could hamper their own experts' attempts to prove that the spill did not cause damage to the homeowners or their property because Pennsylvania law requires that expert opinion testimony be based on facts admitted in evidence. *See Murray v. Siegal,* 413 Pa. 23, 195 A.2d 790 (1963).

Several times Appellants sought permission from the EPA to take a videotape deposition of Erdman at his office which any interested homeowner could attend. In denying the request, the EPA's Regional Counsel (Region III) Bruce Diamond, referring to the applicable EPA regulations governing such requests, 40 C.F.R. § 2.401 *et seq.* (1988), advised Appellants that he had determined that allowing the testimony was not clearly in the EPA's interest, that the EPA would appear to be taking sides in a litigation in which it was not a party, and that the cumulative effect of granting such requests could have an impact on the agency's resources. In making this decision, the EPA's Regional Counsel had before him Erdman's supervisor's letter stating that Erdman's services were necessary to help clear up a backlog of chemical plant and refinery inspections. The EPA did offer to have Erdman submit an affidavit in lieu of his requested testimony, but this was not satisfactory to Appellants because it would not provide the homeowners with the desired opportunity for cross-examination, and the concomitant assurance of the admissibility of the report.

Appellants made a similar request for the testimony of an EPA employee from Region I who was also involved in the monitoring process at issue. This request was denied in Region I, and litigation seeking to compel the EPA to produce the employee was unsuccessful. *See Appeal of Sun Pipeline Co.,* 831 F.2d 22 (1st Cir. 1987), *cert. denied,* — U.S. —, 108 S.Ct. 2821, 100 L.Ed.2d 922 (1988).[1]

Following the EPA's refusal to permit the Erdman deposition, Appellants brought suit against the EPA and Diamond in the United States District Court for the Eastern District of Pennsylvania, alleging that the EPA's decision refusing to permit the requested deposition was invalid as an

---

1. In *Sun Pipeline,* Appellants raised the issues which they have raised here only on motion for reconsideration. The First Circuit upheld the district court's denial of the motion for reconsideration on the ground that appellants there had attempted to use the motion for reconsider-

ation to change their theory of the case, and because they had not complied with the EPA procedure for requesting such testimony. 831 F.2d at 25. The court thus did not address the merits of the arguments raised here. *Id.*

abuse of its discretion. The parties stipulated the facts and the case was decided on cross motions for summary judgment. The district court concluded that judicial review was "not available pursuant to 5 U.S.C. § 701(a)(2)." App. at 252. It held further that even if judicial review were available, "the EPA's decision ... was not arbitrary, capricious or an abuse of discretion and was rationally connected to the facts and in accordance with law." *Id.* Our scope of review of the district court's decisions on both issues is plenary.

### III.

■ We consider first the EPA's contention that the decision to prohibit Appellants from deposing Erdman during working hours is not reviewable. Appellants have not challenged the validity of the EPA's power to promulgate regulations which grant the agency discretion to determine whether to comply with subpoenas or requests for employee testimony in private litigation. *See United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (sustaining Attorney General's power to issue order governing protection of department's records in response to subpoena).

The EPA's authority to govern its internal affairs is derived from 5 U.S.C. § 301, which provides that:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301 (1982).

Pursuant to this statutory provision, the EPA has promulgated regulations governing the testimony of its employees in private suits. When voluntary testimony of an employee is sought, the regulations provide that:

> A request for testimony by an EPA employee under § 2.402(b) must be in writing and must state the nature of the requested testimony and the reasons why the testimony would be in the interests of EPA. Such requests are immediately sent to the General Counsel or his designee ... [who] determines whether compliance with the request would clearly be in the interests of EPA and responds as soon as practicable.

40 C.F.R. § 2.403 (1988).

The purpose of the EPA regulations on this subject is "to ensure that employees' official time is used only for official purposes, to maintain the impartiality of EPA among private litigants, to ensure that public funds are not used for private purposes, and to establish procedures for approving testimony or production of documents when clearly in the interests of EPA." 40 C.F.R. § 2.401(c) (1988).

Although review of agency actions is generally available to "person[s] suffering legal wrong because of agency action" pursuant to 5 U.S.C. § 702 (1982), the EPA contends that a statutory exception to the general rule of reviewability applies to the decision not to permit testimony of an EPA employee. It relies on 5 U.S.C. § 701(a) which contains statutory exceptions to reviewability of agency action. Section 701(a) provides that:

> (a) This chapter applies, according to the provisions thereof, except to the extent that—
>
> (1) statutes preclude judicial review; or
>
> (2) agency action is committed to agency discretion by law.

5 U.S.C. § 701(a) (1982).

The EPA contends that the section 701(a)(2) exception to reviewability is applicable here because the EPA's statutory authority under 5 U.S.C. § 301 to regulate the conduct of its employees gives it unlimited discretion in such matters.

In *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971), the Supreme Court interpreted section 701(a)(2) as establishing a broad presumption in fa-

vor of reviewability, holding that the exception applied only when there is no law to apply. Thus, the Court held that a statutory provision prohibiting the Secretary of Transportation from authorizing federal aid to construct a highway through a public park unless there was "no feasible and prudent alternative" provided law on which judicial review could be based. *Id.* at 410–13, 91 S.Ct. at 820–22.

More recently, the Court, in holding that the FDA's refusal to take enforcement actions against states that used drugs not approved for use in human executions to inflict capital punishment by lethal injection was not reviewable, attempted to harmonize section 701(a)(2) making unreviewable action committed to agency discretion by law with the abuse of discretion standard of review embodied in section 706(2)(A). *See Heckler v. Chaney,* 470 U.S. 821, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). It stated, "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830, 105 S.Ct. at 1655. We have interpreted *Chaney* as not changing the presumption of reviewability of agency action under the APA. *See Chong v. Director, United States Information Agency,* 821 F.2d 171, 175 n. 3 (3d Cir.1987).

Appellants point to the criteria specified in the regulations for allowing the testimony in arguing that there is law to be applied by a reviewing court. The EPA on the other hand contends that 5 U.S.C. § 301 provides unfettered discretion on matters pertaining to control of its employees, that the regulations do no more than provide a non-exclusive set of factors to be considered in making decisions as to whether to permit employee testimony in a given case, and that a reviewing court has no legal standard to apply. Thus, argues the EPA, the exception in 5 U.S.C. § 701(a)(2) is met.

■ This court in *Local 2855, AFGE (AFL–CIO) v. United States,* 602 F.2d 574 (3d Cir.1979), set forth the analytical framework to be followed before the court may determine that an agency decision is unreviewable under section 701(a)(2). To so hold, we must consider whether: 1) the action involves broad discretion, not just the limited discretion inherent in every agency action, *id.* at 578; 2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review, *id.* at 579; and 3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command, *id.* at 580. Applying these criteria in that case we held that the army's decision to contract out stevedoring services to a private concern was not reviewable. We focused primarily on the absence of fixed statutory or regulatory standards, and secondarily on the fact that the decision as to how to utilize army resources was particularly within the army's expertise. *Id.* at 580–83.

■ We have, however, held that when agency regulations or internal policies provide sufficient guidance to make possible federal review under an abuse of discretion standard, agency decisions are not unreviewable, even absent express statutory limits on agency discretion. In *Chong,* we had before us United States Information Agency regulations covering waiver of the two-year foreign residency requirement for exchange visitors seeking to apply for permanent residency status. We held that because these regulations required the agency to "review the policy, program, and foreign relations aspects of the case" and "transmit a recommendation to the Attorney General for decision," 22 C.F.R. 514.32, they provided sufficient guidance to reviewing courts and were therefore reviewable. *Chong,* 821 F.2d at 175–76; *see also Hondros v. United States Civil Service Comm'n,* 720 F.2d 278, 294 (3d Cir.1983) (official memorandum from Marshal's Office stating that the Office would utilize Civil Service certification procedure in making certain hiring decisions constituted policy, and thus the administration of such policy could be reviewed under an arbi-

trary, capricious, or abuse of discretion standard).

This case is comparable to *Chong*, where the regulations did not state a legal standard but merely listed the factors the agency must consider in reaching a decision. The EPA regulations require the agency to consider whether allowing an employee to testify in a given case is in the agency's interest, *see* 40 C.F.R. § 2.403, and specify a number of relevant factors, *i.e*, the appearance of taking sides and the effect on agency resources, *see* 40 C.F.R. § 2.401(c). Once the agency has articulated factors to be considered in deciding requests for employee testimony, the agency effectively has limited its own discretion and would not be free to make a decision based exclusively on factors not contained in the regulations. *See Service v. Dulles*, 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957).

The EPA argues that under the second *Local 2855* criterion the factors identified in the regulations involve political, managerial, and economic concerns that are not susceptible to meaningful judicial review. Although some factors do trench on managerial concerns, we do not believe that the factors enumerated in the regulations, taken as a whole, are so devoid of objective benchmarks as to make them unreviewable. We thus conclude, as in *Chong*, that there is sufficient law to apply to make the agency action reviewable.

## IV.

▇▇ We turn then to the merits of the EPA's decision to reject Appellants' request for Erdman's deposition testimony. We note that after the argument in this case the Fourth Circuit sustained the EPA's right to prevent the testimony of an EPA employee pursuant to a state court subpoena. *See Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir.1989). Although in *Boron*, unlike here, the EPA relied on a sovereign immunity theory and that was the basis for the court's decision, we nonetheless find that opinion instructive. In addition, there are, as the *Boron* court stated, numerous cases in which the courts

have held that a federal employee may not be compelled to obey a subpoena contrary to the agency's instructions under valid agency regulations. *See, e.g., Swett v. Schenk*, 792 F.2d 1447 (9th Cir.1986); *Giza v. Department of Health Education & Welfare*, 628 F.2d 748 (1st Cir.1980). In any event, the issue as framed by the parties before us is whether the agency's decision was arbitrary, capricious, or an abuse of discretion, *see* 5 U.S.C. § 706(2)(A) (1982); *see also Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (per curiam), and whether it was rationally connected to the facts and in accordance with the law, *see Shane Meat Co. v. United States Department of Defense*, 800 F.2d 334, 336 (3d Cir.1986).

*Chong* counsels that where the regulations which provide the governing law vest the agency with "rather broad discretion," our scope of review is "severely limited." *Chong*, 821 F.2d at 176. We are only free to determine whether the agency followed its own guidelines or committed a clear error of judgment. *See Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823.

The record makes clear that the EPA recognized and considered the factors set forth in 40 C.F.R. § 2.401(c) in making its decision. Both of the EPA's letters denying Appellants' request expressly articulate the EPA's concern that permitting Erdman to testify as a witness for the Appellants would make it appear that the agency was taking sides in the litigation, the concern that the cumulative effect of allowing such testimony would constitute a drain on EPA resources, and the conclusion that such testimony was not in the EPA's interest. In essence, Appellants' argument that EPA did not follow its own regulatory criteria reduces to the argument that they do not agree with the EPA's decision. While we may not have made the same decision as the EPA did, we are not free to substitute our judgment for that of the agency on this issue. *See Overton Park*, 401 U.S. at 416, 91 S.Ct. at 823.

Although it is certainly arguable that permitting Erdman to give a deposition based on facts within his knowledge would

not create the appearance of taking sides, the EPA's conclusion to the contrary is not capricious. It is important to note that EPA has not withheld relevant information as to the test results. The parties were given the information in written form and the EPA agreed to provide Erdman's testimony in the form of an affidavit. For strategic reasons, the Appellants, defendants in the private litigation, seek to introduce the EPA reports and the private plaintiffs oppose the introduction. The EPA's decision that if it assists Appellants in their trial tactics it would appear to be taking sides is thus not irrational.

Similarly, Appellants have not shown that the agency's judgment that the potential cumulative impact of granting such requests would constitute a drain on the agency's resources is arbitrary. Notwithstanding Appellants' argument that Erdman's deposition, which they have volunteered to take at his office, would only take a minimal amount of time, there is no guarantee that cross-examination would not be lengthy. In addition to the class action suit, there are pending suits by opt-out class members against whom Appellants would also want to use Erdman's testimony and who therefore might also be entitled to cross-examination.[2] Moreover, Appellants' argument about the minimal burden in this case fails to take into account the EPA's legitimate concern with the potential cumulative effect of granting such requests. EPA argues that private litigation follows each environmental issue. Its concern about the effects of proliferation of testimony by its employees is within the penumbra of reasonable judgmental decisions it may make.

Nor can we say that the EPA abused its discretion in determining that Erdman's testimony would not be in its interest. The EPA has defined its interest as the effi-

cient use of the resources allotted to it, which the regulations explain encompasses considerations such as use of the employee's time "only for official purposes" and ensuring "that public funds are not used for private purposes." *Id.* § 2.401(c). EPA's public mission is that of "developing and enforcing environmental standards and other policies." 50 Fed.Reg. 32, 386 (Aug. 9, 1985).

The EPA could reasonably anticipate that its employees would be the subject of frequent requests for testimony arising from such duties. As the Fourth Circuit stated in *Boron Oil*, the EPA "has a valid and compelling interest in keeping its On-Scene Coordinators, as a class, free to conduct their official business without the distractions of testifying in private civil actions in which the government has no genuine interest." *Boron Oil*, 873 F.2d at 71. The regulation permits the EPA to withhold permission for employee testimony when the information which is the subject of such inquiry was acquired in the course of the employee's performance of official duties or because of the employee's official status. *See* 40 C.F.R. § 2.401. Thus, it does not cover the employee's testimony on facts acquired as a private citizen, which is consistent with the general obligation of citizens to provide testimony.[3] Moreover, the regulations do not apply when the EPA is a party, and thus they make no attempt to shield EPA employees from discovery in such situations.

Even when the EPA is not a party, the regulations distinguish between the testimony of an EPA employee when requested by another federal agency, or local or state legislative or executive body, *see* 40 C.F.R. § 2.402(a), and such testimony when requested in private litigation, *see id.*

2. The class as originally certified was composed of 200 homeowners. The record before us does not show how many members of the class assert damage claims or the number of suits filed by opt-out class members.

3. Although the regulations do not apply "[w]here employees provide expert witness services as approved outside activities," 40 C.F.R.

§ 2.401(b)(3), the EPA has taken the position that Erdman's testimony pursuant thereto would be inconsistent with the regulation that prohibits actions which "would result in or create the reasonable appearance of ... [u]sing public office for private gain." 40 C.F.R. § 3.103(d) (1988). The validity of the EPA's interpretation in this respect is not before us.

§ 2.402(b). Appellants do not challenge the rationality of such a distinction.

We do not gainsay that there is a generalized public interest in having public employees cooperate in the truth seeking process by providing testimony useful in litigation. While, as we have stressed, it is not likely that we would have interpreted the EPA's interests as narrowly as it has done here, we cannot say that it abused its discretion in deciding that its interest in having the time of its employees (and therefore taxpayers' money) spent on agency business outweighed the interests of Appellants in having the EPA reports admitted into evidence in private litigation to which the EPA was not a party.[4]

The Appellants also argue that the EPA abused its discretion because it departed from its established policy of granting requests for employee testimony in similar private litigation. Appellants base their argument on their analysis of EPA documents concerning requests for testimony in other cases which the EPA furnished to Appellants pursuant to a request under the Freedom of Information Act. Assuming without deciding that such an inquiry is appropriate under our severely limited scope of review, we conclude that Appellants' argument must fail.

A review of the agency decisions and the statistics concerning the EPA's treatment of requests for testimony in private litigation cited by Appellants does not establish that there is a policy to grant employees the right to testify as factual witness in such cases. In many of the cases cited by Appellants, the EPA clearly articulated the reason that allowance of such testimony was in its interest, such as, defending the agency's reputation against charges of delay or misconduct in handling matters at issue in the litigation. The fact that the deciding officer in another region may have on a few occasions granted permission to an employee to testify in private litigation under circumstances that are arguably similar to those involved here is entirely consistent with the discretionary nature of the decision in question.

Furthermore, the statistics referred to by the Appellants reveal that in the first two years after the regulations were promulgated, the EPA received seventy-one requests or subpoenas for testimony in private litigation and granted permission in only twenty-five (35.2% of the cases). EPA Region III, the region involved in this case, received eight requests during that period and granted none. The statistics suggest a nationwide tendency to deny such requests, and reveal a consistent regionwide policy to deny them. Appellants have thus failed to show that EPA's decision to deny the deposition in this case was such a deviation from its usual procedure as to constitute an abuse of discretion.

## V.

In summary, we reject the district court's conclusion that the EPA's determination is unreviewable. Nonetheless, we conclude, as did the district court in its alternative holding, that the EPA did not abuse its discretion or otherwise err in preventing Erdman from using agency time to give deposition testimony on Appellants' behalf in private litigation.

This appeal raises no challenge to the EPA's authority to promulgate the regulation governing use of its employees' time, and its decision in this case falls within the parameters of the agency's discretion as set forth in the applicable statute and regulations. For the foregoing reasons, we will affirm the judgment of the district court.

WEIS, Circuit Judge, dissenting.

I agree with the majority that the EPA's action here is subject to review by the courts. I dissent, however, from the holding that the agency's action was not arbitrary and capricious.

The right of a governmental agency to withhold information and testimony from judicial proceedings is a controversial matter that is far from settled. The decision in

---

**4.** We emphasize that, of course, the EPA monitoring results may in fact be admissible in the Pennsylvania damage actions, even without Erdman's testimony.

*United States ex rel. Touhy v. Ragen,* 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951), is sometimes cited for the proposition that an agency head is free to withhold evidence from a court. But the Supreme Court in *Touhy* specifically refused to reach that question.[1] *Id.* at 467, 71 S.Ct. at 419. The Court held that a Justice Department official acting on orders of the Attorney General could not be held in contempt for failing to produce records. In effect, the Court created what might be termed a type of immunity for the subordinate official who otherwise would be caught in the unpleasant dilemma of refusing to obey either an order of his superior or one issued by a court. In the end, the Court concluded that the wrong person had been subpoenaed.

*Touhy* immunity for a subordinate was the controlling issue in cases where the governmental agency was not a party, such as *Swett v. Schenk,* 792 F.2d 1447 (9th Cir.1986), and *Smith v. C.R.C. Builders Co.,* 626 F.Supp. 12 (D.Colo.1983). In the present case, by contrast, the issue of whether the EPA properly refused to permit its employee to testify is squarely before us.[2]

The action of the EPA in this instance rides roughshod over one of the fundamental maxims of the law—"the public has a right to every man's evidence." The Supreme Court has on numerous occasions reiterated Lord Hardwicke's articulation of that long-standing common law precept. *E.g., Trammel v. United States,* 445 U.S. 40, 50, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980); *United States v. Nixon,* 418 U.S. 683, 709, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974); *Branzburg v. Hayes,* 408 U.S. 665, 688, 92 S.Ct. 2646, 2660, 33 L.Ed.2d

626 (1972); *United States v. Bryan,* 339 U.S. 323, 331, 70 S.Ct. 724, 730, 94 L.Ed. 884 (1950). Declining to even mention this basic tenet, the agency asserts that its own self-serving regulation grants the right to withhold testimony unless the EPA in its unreviewable discretion determines that granting permission "would clearly be in the interests of EPA." 40 C.F.R. § 2.403.

Plaintiffs did not contest the validity or breadth of this regulation in the district court, and precedents of our Court bar consideration of an issue not presented to the trial judge in the first instance. *E.g., Halderman v. Pennhurst State School & Hosp.,* 673 F.2d 628, 639 (3d Cir.1982) (in banc) (citing *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984); *Caisson Corp. v. Ingersoll–Rand Co.,* 622 F.2d 672, 680 (3d Cir.1980); *Newark Morning Ledger Co. v. United States,* 539 F.2d 929, 932 (3d Cir.1976). Therefore, our review is limited to whether, assuming the regulation to be valid, the agency's action was proper. I will not lengthen the discussion here by taking issue with the majority's application of the arbitrary and capricious standard of review, because even allowing the EPA broad discretion, the decision should not stand.

The determination of whether a given agency action is arbitrary or capricious may not take place in a vacuum—the facts and general principles of law must be considered. Differing circumstances can excuse conduct in some instances and fault it in others.

---

**1.** Justice Frankfurter emphasized this point, writing in concurrence,

"[T]he decision and opinion in this case cannot afford a basis for a future suggestion that the Attorney General can forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached."

*Touhy,* 340 U.S. at 472, 71 S.Ct. at 421 (Frankfurter, J., concurring).

For a discussion of the limited reach of the *Touhy* decision, see Note, *Discovery from the*

*United States in Suits Between Private Litigants —The 1958 Amendment of the Federal Housekeeping Statute,* 69 Yale L.J. 452 (1960).

**2.** The issue arose peripherally in *Boron Oil Co. v. Downie,* 873 F.2d 67 (4th Cir.1989), which involved a suit to compel an EPA On–Scene Coordinator to obey a subpoena in a civil action in state court. There, the Court of Appeals, relying on *Touhy* immunity, held that the district court erred in ordering the agency employee to testify. The Court in *Boron Oil* referred to the doctrine of sovereign immunity in reaching its decision, but that issue is not before us here.

In *Branzburg*, the Court noted Bentham's famous exposition of the duty to produce evidence in court. Because his words are pertinent here, they bear repeating:

"Are men of the first rank and consideration—are men high in office—men whose time is not less valuable to the public than to themselves—are such men to be forced to quit their business, their functions, and what is more than all, their pleasure, at the beck of every idle or malicious adversary, to dance attendance upon every petty cause? Yes, as far as it is necessary, they and everybody.... Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing by in the same coach, while a chimney-sweeper and a barrow-woman were in dispute about a halfpennyworth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No, most certainly."

*Branzburg*, 408 U.S. at 688 n. 26, 92 S.Ct. at 2660 n. 26 (quoting 4 *The Works of Jeremy Bentham* 320–21 (J. Bowring ed. 1843)).

Professor Wigmore was emphatic in his support for the obligation. He wrote that society has the right to the testimony because the demand comes from "the community as a whole—from justice as an institution and from law and order as indispensable elements of civilized life." 8 J. Wigmore, *Evidence* § 2192, at 73 (J. McNaughton rev. ed. 1961). The particular cause before the court may be "petty and personal, but the results that hang upon it are universal.... The pettiness and personality of the individual trial disappear when we reflect that our duty to bear testimony runs not to the parties in that present cause, but the community at large and forever." *Id.*

Like most general maxims, there are exemptions from the duty to testify. Such examples as national security, self-incrimination, and business secrets come to mind. But no such considerations are present here. The EPA does not—indeed, could not—contend that the information sought here by way of testimony is privileged.

The curious feature of this case is that the data have already been disclosed to the parties, but, on the present state of the record, cannot be submitted to the jury in the state court except through the process of direct and cross-examination of the EPA employee. The EPA's actions are paradoxical—it willingly directed an employee to perform air monitoring tests at the site of the pipeline rupture and disclose the results to the litigants, but now blocks presentation of the facts to a court of law.

A critical factor in assessing the interests of justice here is that no person can provide the evidence in question other than the employee who performed the air quality measurements. This, therefore, is not a case in which the evidence is cumulative or non-essential, or available from another witness. In these circumstances, where there is but one source of material evidence, the duty to testify becomes even more compelling.

The action of the EPA is, in a real sense, suppression of relevant and material evidence. Society has the right to insist that such a drastic step be supported by unassailable grounds—especially when it is a governmental agency that excludes facts from the courts. When an individual citizen has the duty to testify regardless of personal inconvenience or financial loss, surely a governmental agency, in the absence of a legitimate ground for exemption, should not be held to any lesser standard of civic responsibility. The administration of justice is poorly served when the government itself fails to set a proper example for its citizens.

Whether an agency's decision was arbitrary and capricious is judged by the standards set out in *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). There, the Court explained that action is unacceptable under this level of review

"if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agen-

cy, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Id.* at 43, 103 S.Ct. at 2866.

In denying the plaintiffs' request, the EPA maintained that the testimony "would add nothing to our public mission and could be seen as taking sides in the litigation." Letter from Regional Counsel to Attorney for Sun Pipe Line Company (July 31, 1987). Moreover, "while the amount of time which this particular exercise might take may be small, the precedent it sets and the future cumulative effect of similar requests could have a significant impact on the Agency's resources." *Id.* The agency further declared that "if an employee is to testify, the testimony must further EPA's mission." *Id.*

These "explanations" arguably fail all of the criteria the Supreme Court used to determine whether an agency action is arbitrary and capricious. *See Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, 103 S.Ct. at 2866. It is enough for me, however, that the agency's reasons completely disregard the obligation of citizens and governmental agencies to present evidence in furtherance of the proper administration of justice. It is curious indeed that the EPA's concern about establishing a troublesome precedent ignores, as it does, a valued legal principle of several centuries standing.

Although it professes a desire to be impartial by suppressing evidence, the EPA is, in reality, taking sides. To withhold testimony that may be helpful to one side is to favor the other, but more importantly for society, is to prejudice proper resolution of the litigation. Accepting the proposition that testifying would inappropriately create the appearance of taking sides nullifies the duty to provide evidence.

Conceivably, if providing testimony requires an undue diversion of an agency's resources, some accommodation might be necessary. But that is not a factor here. The proposal to take a one-time deposition in the EPA office rather than to have the witness present in court will reduce the time required, and will make the evidence usable in more than one case. Obviously, this procedure amounts to a substantial saving of time and shows due consideration for conserving EPA's finite resources. Any diversion—if indeed it be that—is *de minimis* here. Thus, the agency's explanations for withholding evidence may charitably be described as "non-reasons." As a result, I must conclude that the EPA committed a clear error of judgment that requires us to reverse its decision. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The action of the EPA was arbitrary and capricious, and I would require it to permit its employee to testify at the deposition as requested.