Jackie MOORE, individually and as the natural guardian of her minor child, Christopher Case, Plaintiff,

v.

ARMOUR PHARMACEUTICAL CO., Defendant.

Johnny Ray KELLAR and Margie Kellar, individually and as the minor child, Johnny Travis Kellar, Plaintiffs,

v.

CUTTER LABORATORIES, DIVISION OF MILES, INC., and Armour Pharmaceutical Co., Defendants.

No. 1–89–cv–2235–CAM.

United States District Court, N.D. Georgia, Atlanta Division.

Feb. 6, 1990.

**552**

Nina Loree Hunt, Office of U.S. Atty., N.D.Ga., Atlanta, Ga., for movant.

Robert L. Parks and Laura R. Anderson, pro hac vice, Anderson Moss Parks & Russo, Miami, Fla., for plaintiffs.

## ORDER

MOYE, District Judge.

The above-styled action is before the court on the United State government's motion to quash subpoena or, in the alternative, for a protective order, and plaintiffs' motion for oral arguments on the government's motion. For the reasons stated below, the government's motion is GRANTED and the plaintiffs' motion is DENIED.

## FACTS

Plaintiffs are hemophiliacs infected with the HIV virus and have sought, by subpoena, testimony from two physicians who work for the Center for Disease Control (hereafter "CDC"), Dr. Francis and Dr. Evatt. Dr. Evatt's subpoena is the subject of this motion. Nevertheless, the facts surrounding Dr. Francis's involvement with this lawsuit remain factually important.[1] Dr. Evatt is the Director for the Division of Host Factors. Both Dr. Evatt and Dr. Francis are involved in research to develop ways of detecting the HIV virus in donor blood. Neither the CDC nor the physicians are party to this lawsuit. Defendants are members of the "blood industry" who allegedly supplied the "infected" blood to plaintiffs. The thrust of plaintiffs' lawsuit is that defendants failed to warn plaintiffs of the risk of contracting the HIV virus from the blood that defendants were supplying plaintiffs.

Testimony is sought regarding: "1) The developing position of the CDC as to the evolution of the AIDS epidemic and the technology available at specific time points for screening blood and blood products; 2) The steps taken by the CDC physicians to safeguard the public; and 3) Notifications made to plasma and fractionating manufacturers, blood banks, and others regarding the ongoing seriousness of the unknown

---

1. A motion to quash a subpoena that was served on Dr. Francis by plaintiffs was granted by a magistrate in the Northern District of California. *Johnny Ray Kellar, et al., v. Cutter Laboratories, Division of Miles, Inc., and Armour Pharmaceutical Co.* Civ.Ac. No. 89–139 (N.D.Ca. 1989). The court held that the plaintiffs failed to present a need sufficient to override the government's interest in preserving agency resources. A motion for reconsideration has since been filed.

transmissable virus subsequently identified as AIDS." (See Government's Brief in Support of Motion to Quash Subpoena, or, alternatively, For A Protective Order, p. 1, Oct. 3, 1989.)

The CDC, with the help of doctors like Dr. Francis and Dr. Evatt, regularly publishes articles that represent its official position on advancements in AIDS research. Input from many different physicians and researchers go into the publications. Obviously, the publications do not necessarily represent the opinion of all the different individual researchers; rather, the CDC must formulate what it feels is the most accurate position, then publish it. It is an established fact that Dr. Francis and Dr. Evatt took some positions that were not immediately included in the various publications. In particular they disagreed with the CDC's official position as to the proper procedures for detecting the virus and as to warning the public of certain risks. It is also an established fact that Dr. Francis and Dr. Evatt made some representations or recommendations to defendants, concerning risks and advancements in the subject area, that were not implemented by defendants. Said representations were made either directly to defendants, or indirectly vis-a-vis public discussions on the subject. However, as mentioned, Dr. Francis's and Dr. Evatt's personal opinions did not always line up with the official position of the CDC.

Pursuant to 5 U.S.C. § 301, the head of an executive department may prohibit an employee of his department from giving testimony in private litigation. That section reads as follows:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

The Center for Disease Control, and likewise Dr. Francis and Dr. Evatt, is under the authority of the Secretary for Health and Human Services. Pursuant to 5 U.S.C. § 301, the Department of Health and Human Services (hereafter "HHS") has promulgated regulations restricting employee testimony in private litigation. Such regulations appear in 45 C.F.R. Part 2 (1987):

> § 2.3 **Policy on presentation of testimony and production of documents**
> a) No Department of Health and Human Services employee may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the employee's official relationship with the Department of Health and Human Services unless authorized by the Agency head pursuant to this part based on a determination by the Agency head, after consultation with the Office of General Counsel, that compliance with the request would promote the objectives of the Department of Health and Human Services.

Permission to depose Dr. Francis has been denied by the Department of Health and Human Services. The reasons for the denial are embodied in a letter to plaintiffs from Robert E. Windom, Assistant Secretary for Health and Human Services. (See Government's Motion to Quash Subpoena or, alternatively, for a Protective Order, Exhibit G, October 3, 1989.) The primary reason was that the agency had received so many requests relating to AIDS litigation, that it simply could not grant all the requests and simultaneously carry on its governmental functions. Dr. Windom pointed out to plaintiffs that the CDC diligently disseminates many official articles and recommendations that were readily available to plaintiffs. He basically explained to plaintiffs that such publications are the only realistic and practical way for the agency to assist private litigants. Other reasons cited by the government for refusing to allow the depositions were: 1) the government's policy of remaining strictly neutral in private litigation; and 2) the government's concern that allowing their

employees to get into the bitter conflict of private litigation would chill "frank, free and full exchanges" within the scientific community.

There is considerable evidence on the record that Mr. Windom's and the government's concerns are justified. It is a commonly known fact that there are thousands of AIDS-related cases being litigated around the country and abroad. There are some 200 cases alone against the blood industry. The fact that the CDC is always on the forefront of AIDS research makes it a prime target for subpoenas from private litigants. The HHS attorney assigned to the CDC to give legal advice on the CDC's AIDS program is Verla S. Neslund. Ms. Neslund describes the amount of inquiries the CDC has received from private litigants as "overwhelming". Since 1987 there have been 281 Freedom of Information Act Requests (hereafter "FOIA") received by the CDC. There have been at least 225 responses to inquiries from attorneys seeking AIDS information. In the past seven years there have been 50 requests for testimony from Drs. Evatt, Francis and Spira. It is worthy of note that plaintiffs have made nine FOIA requests on the CDC. The CDC responded with at least 456 pages. Plaintiffs allege that what they received simply does not assist them in their case.

## LEGAL DISCUSSION

The authority of department heads to promulgate regulations restricting employee testimony in private litigation has been upheld by the Supreme Court in *United States ex rel. Touhy v. Ragan*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). In *Touhy* a regulation was upheld that was issued by the Attorney General restricting testimony by employees of the Justice Department. The case law since *Touhy* has consistently upheld similar regulations.

Pursuant to 5 U.S.C. § 706(2)(A), this court can overturn the HHS's action, only if such action was "arbitrary, capricious, an abuse of discretion, or otherwise not contrary to law". One recent Third Circuit case with facts similar to the case at hand is *Davis Enterprises v. United States En-*

*vironmental Protection Agency*, 877 F.2d 1181 (3d Cir.1989). In *Davis* plaintiffs were requesting the deposition of an Environmental Protection Agency (hereafter "EPA") employee regarding information that was essential to their cause of action. The underlying case involved an underground gasoline spill in Pennsylvania. Gasoline vapors had entered the basements of many homes in the area of the spill. The Pennsylvania Department of Health arranged to have air quality tests performed by the EPA. The EPA's results and the defendant's results were allegedly different. Although the EPA had given the plaintiffs a copy of the test results, the plaintiffs sought to use an EPA employee as a fact witness at trial. Pursuant to regulations promulgated by the EPA, the plaintiffs were denied this permission.

The EPA's reasons for not allowing its employee to testify were practically identical to the HHS's reasons in the instant case. The EPA wanted to remain neutral and was greatly concerned that a policy granting such requests would constitute a drain on the system in light of the proliferation of environmental-related litigation. The court held that the EPA's reasons were not arbitrary. Of particular concern to the court was the *cumulative* impact of allowing the testimony to be taken:

> ... Appellants' argument about the minimal burden in this case fails to take into account the EPA's legitimate concern with the potential cumulative effect of granting such requests. EPA argues that private litigation follows each environmental issue. Its concern about the effects of proliferation of testimony by its employees is within the penumbra of reasonable judgmental decisions it may make ... Nor can we say that the EPA abused its discretion in determining that Erdman's testimony would not be in its interest. The EPA has defined its interest as the efficient use of the resources allotted to it, which the regulations explain encompasses considerations such as use of the employee's time "only for official purposes" and ensuring "that

public funds are not used for private purposes".

877 F.2d at 1187.

The analysis in the instant case is quite similar. Plaintiffs argue that their request is a "one time thing", that the particular issues involved are unique, and that there are no other plaintiffs or attorneys around the country who would be seeking this particular type of information from Dr. Evatt. However, plaintiffs fail to take into consideration the *cumulative* impact of allowing their request. There is no reason to believe that granting this request *would not* result in an onslaught of subpoenas served on the CDC requesting testimony by CDC employees on AIDS-related issues. Given the present proliferation of AIDS-related litigation, the latter result would seem to be inevitable. It is therefore irrelevant that the particular issue at hand happens to be a narrow one.

Another similarity between this case and *Davis* is that the CDC has given plaintiffs the official CDC publications and other documentation relating to plaintiffs' case, just as the EPA had given the plaintiffs its test results. Plaintiffs already have positive evidence of Dr. Francis's and Dr. Evatt's positions. There is no evidence that the CDC has attempted to conceal something or displayed favoritism as to one party or the other. Plaintiffs are being treated no differently than hundreds of other litigants around the country who are seeking information from executive agencies.

Plaintiffs also argue that since the CDC has granted at least one request in the past, their request should be granted as well. The court in *Davis* also dealt with this issue. 877 F.2d at 1188. The mere fact that a request has been granted in the past, does not guarantee plaintiffs that right in the future. A court must instead analyze the particular agency's decision and decide if it is reasonable under the circumstances, which, of course, vary from case to case.

Many other courts have upheld agency action restricting employee testimony. In *United States v. Bizzard*, 674 F.2d 1382 (11th Cir.1982), the Eleventh Circuit affirmed the district court's decision to quash a subpoena when the defendant sought the testimony of a former Justice Department employee. That case is particularly meaningful in that it involved a criminal case, and therefore, presumably, a higher scrutiny because the defendant's constitutional right to a fair trial was at issue. *See also Appeal of Sun Pipe Line Co.*, 831 F.2d 22 (1st Cir.1987) (EPA regulations upheld); *Hotel Employees–Hotel Association Pension Fund v. Timperio*, 622 F.Supp. 606 (S.D.Fl.1985) (Labor Department regulations upheld).

In a number of other cases which involved state court subpoenas being challenged in federal court, sovereign immunity was used as grounds to quash a subpoena of a federal employee. *Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir.1989) (Fourth Circuit held that even though government was not a party in the suit, the subpoena was essentially an "action" against the United States, thus sovereign immunity applied); *Sweet v. Schenk*, 792 F.2d 1447 (9th Cir.1986) (Ninth Circuit affirmed district court's dismissal of contempt action against National Transportation Safety Board employee for refusal to testify based on his compliance with a regulation promulgated by the National Transportation Safety Board); *Giza v. Secretary of Health, Ed. & Welfare*, 628 F.2d 748 (1980) (Food and Drug Administration regulations upheld); *Environmental Enterprises Inc. v. United States Environmental Protection Agency*, 664 F.Supp. 585 (D.D.C.1987) (EPA regulations upheld); *Reynolds Metals Company v. Crowther*, 572 F.Supp. 288 (D.Ma.1982) (Department of Labor regulations upheld). Although sovereign immunity cannot be used in the instant case because the underlying action is in federal court and not in state court,[2]

---

**2.** "A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed

the above cases are nonetheless relevant. In addition to using a sovereign immunity analysis to uphold the regulations, the respective courts also applied a *Touhy supra* policy analysis. The cases either expressly or implicitly stressed the policy of preserving the resources of governmental agencies from the flood of private litigation.

In fact, in all of the cases cited herein, policy was a major part of the holding. Plaintiffs have presented a reasonable explanation of why they need Dr. Evatt's deposition. However, their interest in getting the deposition simply cannot compare to the government's interest in maximizing the use of its limited resources in dealing with a national health crisis. It is true that this holding may adversely affect a number of plaintiffs. However, a contrary holding would effect millions of people worldwide who are now or will be infected with AIDS and who are anxiously awaiting an answer

from the scientific community as to a cure from the dreaded disease. This court feels that the relevant regulations promulgated by the HHS have struck a proper balance between the interests of private litigation on the one hand, and the interests of preserving government resources on the other.

### CONCLUSION

Therefore, the government's motion to quash subpoena is GRANTED. As a result, plaintiffs' motion for oral argument is DENIED as moot.

SO ORDERED.

---

to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States."

5 U.S.C. § 702.

Since the legal theory in the above cases *e.g. Boron Oil, supra,* is that a subpoena pursuant to

a state court proceeding is essentially an "action" against the United States, then presumably a subpoena pursuant to a federal court proceeding is also an "action" against the United States, thereby triggering the above statute.