DUBINA, Circuit Judge:
Appellants Jackie Moore, individually and as the natural guardian of her minor child, Christopher Case; Marge Kellar, individually and as the natural guardian of Johnny Travis Kellar; and Clifford Ray and Louise Ray, individually and as the natural guardians of Randy Ray, Robert Ray, and Richard Ray, (hereinafter collectively referred to as “the plaintiffs”), appeal the district court’s order quashing deposition subpoenas seeking the testimony of Dr. Bruce Evatt, an employee of the Center for Disease Control (“CDC”) in Atlanta, Georgia. We find that the plaintiffs’ subpoena was too broad, and, accordingly, affirm the district court’s order. 129 F.R.D. 551.
I. BACKGROUND
This action arose out of three private product liability actions filed by the plaintiffs in federal district courts in Florida. The plaintiffs are parents whose children are hemophiliacs infected with the Human *1196 Immunodeficiency Virus (“HIV”).[1] The parents alleged in their complaints that their children were exposed to HIV through tainted transfusions of Factor VIII, a blood-clotting agent derived from donated human blood plasma. The defendants in the Florida litigation are Armour Pharmaceutical Company (“Armour”) and Cutter Laboratories, a division of Miles Laboratories, Inc. (“Cutter”). Armour and Cutter are members of the blood industry who allegedly supplied the “infected” blood to the plaintiffs’ children. The plaintiffs alleged that Armour and Cutter failed to adequately screen the donated plasma and the Factor VIII manufactured from the plasma for HIV or associated biological markers. The thrust of their lawsuits is that Armour and Cutter failed to warn them of the risk of contracting HIV from the blood that was supplied to their children.
During the course of the litigation, the plaintiffs sought, by subpoena, testimony from two physicians who work for the CDC, Dr. Evatt and Dr. Donald Francis. The case before us involves only the subpoenas regarding Dr. Evatt. Both Dr. Evatt and Dr. Francis are involved in research developing methods for detecting HIV in donor blood. The plaintiffs sought testimony regarding the developing position of the CDC as to the evolution of the AIDS epidemic and the technology available at specific points in time for screening blood and blood products, the steps taken by the CDC physicians to safeguard the public, and notifications made to plasma and fractionating manufacturers, blood banks, and others regarding the ongoing seriousness of the unknown transmissible virus subsequently identified as AIDS.
The CDC, with the help of doctors, regularly compiles publications that represent its position on advancements in AIDS research. Input from many different physicians and researchers is printed in these publications. The publications do not necessarily represent the opinions of all the different researchers; rather, the CDC will formulate what it feels is the most aceu-rate position, then publish it. Drs. Francis and Evatt took some positions as to the proper procedures for detecting HIV and warning the public of certain risks that were not immediately included in the various publications. The two doctors also made some recommendations or representations to Armour and Cutter in the underlying litigation, either directly or indirectly, vis-a-vis public discussions on the subject, concerning the risks and advancements in the subject area. These representations were not implemented by Armour and Cutter, nor were Dr. Francis and Dr. Evatt’s representations endorsed by the CDC.
The CDC and Drs. Francis and Evatt are under the authority of the Secretary for Health and Human Services (“HHS”). The HHS denied permission to the plaintiffs to depose Dr. Evatt because the agency had received so many requests relating to AIDS litigation that it simply could not grant all the requests and simultaneously carry on its governmental functions. Other reasons cited by HHS for refusing to allow the depositions included the government’s policy of remaining strictly neutral in private litigation and the government’s concern that allowing its employees to get into the conflict of private litigation would harm frank, free, and full exchanges within the scientific community.
On August 1,1989, the plaintiffs’ counsel served a subpoena upon Dr. Evatt to testify at a deposition to be taken on August 3, 1989. Counsel had attempted to give Dr. Evatt more notice, but Dr. Evatt was out of the country until the first of the month. By agreement of counsel, Dr. Evatt’s deposition was continued until a later date to allow HHS and the plaintiffs an opportunity to obtain court review regarding the propriety of the deposition of a CDC employee. HHS then filed a motion to quash, or alternatively, for a protective order on behalf or Dr. Evatt and the CDC. The district court granted HHS’s motion to quash.
II. DISCUSSION
Title 5 U.S.C. § 301 authorizes the head of an executive department to place limits *1197 on how employees can disseminate information gained in the performance of their official duties.[2] Pursuant to 5 U.S.C. § 301, HHS promulgated regulations restricting employee testimony in private litigation. The regulations read in part:
No Department of Health and Human Services employee may provide testimony or produce documents in any proceedings to which this part applies concerning information acquired in the course of performing official duties or because of the employee’s official relationship with the Department of Health and Human Services unless authorized by the agency head pursuant to this part based on a determination by the agency head, after consultation with the Office of the General Counsel, that compliance with the request would promote the objectives of the Department of Health and Human Services.
45 C.F.R. § 2.3(a) (1990).
The authority allowing department heads to promulgate regulations restricting employee testimony in private litigation was upheld by the Supreme Court in U.S. ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951) (a regulation was upheld that was issued by the Attorney General restricting testimony by employees of the Justice Department.) Similar regulations are commonplace among other federal agencies, and have been upheld by the federal courts. See, e.g., Davis Enterprises v. U.S. E.P.A., 877 F.2d 1181 (3rd Cir.1989), cert. denied, — U.S. -, 110 S.Ct. 1113, 107 L.Ed.2d 1020 (1990) (Environmental Protection Agency); Swett v. Schenk, 792 F.2d 1447 (9th Cir.1986) (National Transportation Safety Board); Giza v. Secretary of Health, Ed. & Welfare, 628 F.2d 748 (1st Cir.1980) (Health Education & Welfare); U.S. v. Bizzard, 674 F.2d 1382, 1387 (11th Cir.), cert. denied, 459 U.S. 973, 103 S.Ct. 305, 74 L.Ed.2d 286 (1982) (rejecting constitutional challenge by criminal defendant and quashing subpoena of Department of Justice employee). A relatively recent Fourth Circuit decision states that “an unbroken line of authority directly supports [the] contention that a federal employee may not be compelled to obey a subpoena contrary to his federal employer’s instructions under valid agency regulations.” Boron Oil Co. v. Downie, 873 F.2d 67, 73 (4th Cir.1989).
The Federal Rules of Civil Procedure, however, strongly favor full discovery whenever possible. See Fed.R. Civ.P. 26(b)(1). Specifically regarding subpoenas, Fed.R.Civ.P. 45(b) allows a court to “quash or modify the subpoena if it is unreasonable and oppressive.” The trial court, however, has wide discretion in setting the limits of discovery, and its decisions will not be reversed unless a clearly erroneous principle of law is applied, or no evidence rationally supports the decision. Farnsworth v. Procter & Gamble Co., 758 F.2d 1545, 1547 (11th Cir.1985). This circuit has stated that it will review an order to quash only for abuse of discretion. Ariel v. Jones, 693 F.2d 1058, 1060 (11th Cir.1982).
In the present case, HHS filed a motion to quash a subpoena of one of its employees. Pursuant to 5 U.S.C. § 706(2)(A) the district court could only overturn HHS’s action if such action was “arbitrary, capricious, an abuse of discretion, or otherwise not contrary to law.” After a thorough review of the record, we do not find an abuse of discretion by either HHS or the district court.
The primary concern underlying the district court’s decision to quash the subpoena was the CDC’s interest in conserving the time and attention of its employees for the fight against AIDS. The plaintiffs’ interest in getting the deposition of Dr. Evatt simply cannot compare to the government's interest in maximizing the use of its limited *1198 resources in dealing with a national health crisis. Each day that Dr. Evatt and other doctors employed by the CDC spend giving deposition testimony is a day they are kept from doing research that might save numerous lives.
Although the plaintiffs characterize their request as “a ‘one time thing,’ ” the district court pointed to “the cumulative impact of allowing their request.” We agree with the district court’s reasoning when it stated that “given the present proliferation of AIDS-related litigation, an onslaught of subpoenas served on the CDC requesting testimony by CDC employees relating to AIDS-related issues ... would seem to be inevitable” if Dr. Evatt was compelled to testify without agency authorization.[3]
While the HHS cannot put a blanket ban on all requests for testimony, there is no question that in this case, its actions were justified. Dr. Evatt is one of the CDC’s leading AIDS researchers, and his time is extremely valuable. Because the plaintiffs’ subpoena was so broad, no policy considerations could justify overriding HHS’s denial. The subpoena called for Dr. Evatt to give testimony regarding “the developing position of the CDC with respect to the evolution of the AIDS epidemic and the methods available for screening blood and blood components.” A thorough investigation of Dr. Evatt’s knowledge on this subject alone could take weeks, if not months. This would be similar to asking a Federal Aviation Administration employee, in an airline crash case, to detail the evolution of airline safety since the Wright brothers. Part of the court system’s inquiry to determine whether an agency’s denial is “arbitrary or capricious” must include a determination of the burden that the deposition would place on the agency. Clearly, the potential duration of the deposition impacts on the burden. Without question, the potential duration of Dr. Evatt's deposition is sufficient by itself to find that the district court did not abuse its discretion in quashing the subpoena.
In conclusion, we affirm the district court’s granting of the motion to quash Dr. Evatt’s deposition.
AFFIRMED.

. HIV is the virus which may develop into Ae-quired Immune Deficiency Syndrome or AIDS.

. Section 301 reads as follows:
The head of an Executive department or military department may proscribe regulations for the government of his department, the conduct of his employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

. By 1989, AIDS litigation relating to just blood banks, the situation in the present case, had produced more than 200 cases. The CDC had received more than fifty requests for AIDS-related deposition testimony by Dr. Evatt, Dr. Francis, and a third physician involved in AIDS research.