**Susan and Andrew GIZA, Plaintiffs, Appellants,**

v.

**SECRETARY OF HEALTH, EDUCATION AND WELFARE, Defendant, Appellee.**

**No. 80–1080.**

United States Court of Appeals, First Circuit.

Submitted May 9, 1980.

Decided Sept. 3, 1980.

---

Herbert Murphy, Springfield, Mass., on brief, for plaintiffs, appellants.

Alice Daniel, Asst. Atty. Gen., Washington, D. C., Edward F. Harrington, U. S. Atty., Boston, Mass., Eloise E. Davies and Wendy M. Keats, Attys., Civil Division, Dept. of Justice, Washington, D. .C., on brief, for defendant, appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Susan Giza became pregnant while taking the birth control pill "Modicon," which was manufactured by Ortho Pharmaceutical Corporation and was subsequently recalled from the market at the request of the Food and Drug Administration. She and her husband Andrew sued Ortho for "wrongful birth" in the Hampden County Superior Court in Massachusetts. The key issue in this case is whether a federal district judge erred in refusing to compel the appearance of an FDA expert to give deposition testimony for use in the state lawsuit.

*Proceedings in State and Federal Court*

Some review of the tangled history of the state and federal court proceedings is necessary. After filing their state court suit, the Gizas, through counsel, sought permission to depose one or more FDA employees about Modicon. FDA Associate Commissioner for Compliance Joseph Hile denied this request, citing the FDA's policy not to allow its employees to testify in private litigation, but he suggested that counsel make a request under the Freedom of Information Act for FDA records concerning Modicon. Counsel did so, and received some documents from which certain information had been. deleted as trade secret information. 5 U.S.C. § 552(b)(4). Counsel pursued

his request for deposition testimony and for complete documents through administrative channels, all the way to the Secretary of Health, Education and Welfare, without success.

In November, 1977, the Gizas filed suit in the federal district court of Massachusetts, seeking an order that the FDA provide all the documents requested, without deletions and in a form admissible in evidence, and that the FDA make three employees available to testify at a deposition "concerning the matters involved in the plaintiff's [state] court action." Jurisdiction was predicated on 5 U.S.C. § 552, the Freedom of Information Act, and 28 U.S.C. § 1361, which gives the district courts original jurisdiction over mandamus actions against federal officers.

At this point, counsel began to concentrate his efforts on obtaining testimony from Dr. Marion J. Finkel, Acting Associate Director for New Drug Evaluation, Bureau of Drugs, Public Health Service. Dr. Finkel's testimony was of particular interest because she had been involved in the voluntary recall of Modicon and had written a letter to Ortho's President concerning the overall increased rate of pregnancy likely to be associated with certain subpotent Modicon tablets. In May, 1978, counsel filed, in the federal suit, a notice that Dr. Finkel's deposition would be taken in Springfield, Massachusetts, on June 14, 1978. This notice was accompanied by a request for production of documents concerning Modicon. Through administrative oversight, Dr. Finkel did not appear or respond in any way. On June 21, 1978, the Gizas moved for an order compelling discovery under Rule 37(d) of the Federal Rules of Civil Procedure. On July 7, 1978, the government countered with an opposition and a motion for a protective order under Rule 26(c). At this juncture the federal suit became stalled.[1]

On May 3, 1979, a conference was held at which an agreement was struck to provide the Gizas' counsel with material deleted from the FDA documents, with the understanding that the materials would be kept confidential.[2] The district court entered an order directing the turnover of the missing materials within thirty days and contemplating a voluntary dismissal thereafter. Apparently, the matter of Dr. Finkel's testimony was left unresolved. On May 24, 1979, the Gizas' counsel returned to state court, where he moved that Judith Derenberger, a stenographer and notary public, be appointed to record Dr. Finkel's deposition in Maryland, and be authorized to issue a subpoena to Dr. Finkel for the deposition. This motion was allowed, although it does not appear that a subpoena had actually issued to Dr. Finkel.

Next, on October 16, 1979, counsel went back to the federal court, where he requested a ruling requiring the FDA to make Dr. Finkel available to testify. Contending that the state court lacked authority to compel the testimony of Dr. Finkel because she lived and worked in Maryland, beyond the state court's jurisdiction, counsel urged that the federal court secure Dr. Finkel's testimony as a matter of comity. The government again opposed the attempt to depose Dr. Finkel.

On December 21, 1979, the district court issued an order refusing to compel the FDA to make Dr. Finkel available and filed a memorandum explaining its decision. First, the district court pointed out that Dr. Finkel's deposition could not appropriately be taken as part of discovery incident to the federal proceeding, because her testimony was part of the relief sought and what she would say was irrelevant to the ultimate question of her availability. *See* Fed.R. Civ.P. 26(b)(1). Next, the court considered whether the Finkel deposition could be ordered as part of the relief sought in the federal proceeding. Finding no FOIA or mandamus jurisdiction to grant such relief, the district court turned to the Gizas' unfo-

---

1. According to the Gizas, a magistrate denied the motion to compel but the record does not reflect this. It was nearly a year before the case was returned to the district judge for action.

2. Ortho had intervened and agreed to this arrangement.

cused contentions that the district court could compel Dr. Finkel's testimony as a matter of comity and should do so because they had been unable to locate an expert qualified to testify about Modicon.[3] The district court stated that heads of federal agencies have authority to restrict testimony by their subordinates and that such had been done in this case pursuant to an FDA regulation. 5 U.S.C. § 301; 21 C.F.R. § 20.1. *See United States ex rel. Touhy v. Regan*, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). It saw no basis for overriding the refusal to let Dr. Finkel testify in a case which was purely private litigation and in which the government was not responsible for the Gizas' inability to locate an expert. Nor did the district court see itself as obliged or empowered to compel Dr. Finkel's testimony because the state court had authorized a subpoena for her appearance at a deposition.[4]

With respect to the production of documents, the district court's December 21, 1979 memorandum stated that an agreement had been reached and the dispute had been settled. The order of the same date made no mention of this matter. But in their notice of appeal of January 18, 1980, the Gizas not only challenged the order with respect to Dr. Finkel's testimony but also challenged the court's finding that the dispute over documents had been settled, on the ground that five of the documents provided were wholly or partly illegible.[5]

### The Refusal to Compel Dr. Finkel's Testimony

We cannot say the district court erred in denying an order compelling the FDA to make Dr. Finkel available to testify. To the contrary, we have difficulty seeing what authority the district court would have had for compelling her testimony at a deposition.

The district court was plainly correct that the Freedom of Information Act provided no basis for obtaining Dr. Finkel's deposition. Under the FOIA, a district court has jurisdiction to order the production of improperly withheld agency records. 5 U.S.C. § 522(a)(4)(B). To the extent that discovery is allowed in an FOIA action, it is directed at determining whether complete disclosure has been made, e. g., whether a thorough search for documents has taken place, whether withheld items are exempt from disclosure. *E. g., Founding Church of Scientology of Washington, D. C., Inc. v. National Security Agency*, 610 F.2d 824, 833–34 (D.C.Cir.1979); *Exxon Corp. v. Federal Trade Commission*, 466 F.Supp. 1088, 1092–96 (D.D.C.1978). Thus, Dr. Finkel's testimony about Modicon was neither the proper subject of discovery under the FOIA, nor the proper object of a suit under the FOIA.[6] Although the Gizas imply on appeal that under the FOIA Dr. Finkel should have been made available to clarify and amplify certain statements she made in her letter to Ortho's President, a district court simply has no authority under the FOIA to compel an agency to generate explanatory material. *NLRB v. Sears, Roebuck Co.*, 421 U.S. 132, 161–62, 95 S.Ct. 1504, 1521–22, 44 L.Ed.2d 29 (1975).

The district court was equally correct that it could not compel Dr. Finkel's testi-

---

3. In an affidavit included in the district court record, Gizas' counsel documented his efforts to locate an expert.

4. The district court was under the impression that a subpoena had actually issued, but the record does not bear this out.

5. The fact that the court's last order and the docket entry reflecting it said nothing about the production of documents and that, moreover, no separate judgment was filed in the district court creates doubt about our appellate jurisdiction, an issue neither side has raised. Nevertheless, an argument could be made that we have jurisdiction because the district court evidenced its intention to finally dispose of the case on December 21 and the parties have waived any objection to the absence of a separate judgment. *See Bankers Trust Co. v. Mallis*, 435 U.S. 381, 98 S.Ct. 1117, 55 L.Ed.2d 357 (1978). We have elected to address the merits of the appeal.

6. We also agree with the district court that the attempt to depose Dr. Finkel was improper discovery *because* securing her testimony was an object of the Gizas' suit. *See Theriault v. United States*, 503 F.2d 390, 392 (9th Cir. 1974).

mony under 28 U.S.C. § 1361, which provides:

> The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

There was no mandamus jurisdiction because Dr. Finkel owed the Gizas no duty to submit to a deposition. *Davis Associates, Inc. v. Secretary, Department of Housing and Urban Development*, 498 F.2d 385, 388 (1st Cir. 1974).

Furthermore, the district court was justifiably unpersuaded that it could and should compel Dr. Finkel's testimony as a matter of comity. In support of their comity argument, the Gizas cited authority for one federal court's enforcement of a subpoena in aid of discovery in a case pending in another federal district court and for one state court's assisting another state court in securing a deposition. *E. g., In re Surety Association of America*, 388 F.2d 412 (2d Cir. 1967); *Horizons Titanium Corp. v. Norton Co.*, 290 F.2d 421 (1st Cir. 1961); *Robus & Co. v. American Founders Corp.*, 8 F.Supp. 97 (W.D.N.Y.1934); 23 Am.Jur.2d, Deposition and Discovery § 43 (2d ed. 1965). Yet, although comity is an important aspect of the relationship between federal and state courts, the Gizas could muster no authority for a district court's enforcement of a state court subpoena as a matter of comity. The Gizas' comity argument is further weakened by the fact that in the state court proceedings in this case, a subpoena has only been authorized and has apparently not yet issued.

Perhaps aware that general notions of comity provide a shaky basis for arguing that the district court was obliged to compel Dr. Finkel's testimony, the Gizas have elaborated on their comity argument on appeal. Now they contend that under the Full Faith and Credit Clause (Article IV, Section 1) of the United States Constitution and 28 U.S.C. § 1738 the district court should have enforced the state court's order for the taking of Dr. Finkel's deposition. It is true that the statutory provision requires a federal court to give full faith and credit to the judicial proceedings of a state. 28 U.S.C. § 1738; *Huron Holding Corp. v. Lincoln Mine Operating Co.*, 312 U.S. 183, 193, 61 S.Ct. 513, 517, 85 L.Ed. 725 (1941); 1B Moore's Federal Practice ¶ 0.406[1], at 901 and n.1 (2d ed. 1979). But we are aware of no authority interpreting this statute so as to place an affirmative obligation on, and vest jurisdiction in, a federal court to enforce a state court subpoena, much less to compel deposition testimony for which a subpoena has been authorized but not issued. In our minds, the prerogative of a federal court to enforce state process absent specific authorization remains doubtful. *See Local Lodge 1746, IAM & AW v. Pratt and Whitney Division of the United Aircraft Corp.*, 329 F.Supp. 283, 286 (D.Conn. 1971).

For the above reasons, we find it impossible to conclude that the district court erred in declining to compel Dr. Finkel's testimony. It is unnecessary for us to decide when, if ever, it would be appropriate for a federal district court to compel the testimony of a federal officer who has been instructed by the head of his or her executive department not to testify.

### The Illegible Documents

We likewise find it unnecessary to become embroiled in the question whether the FDA has yet to comply with the FOIA because five items it turned over are illegible in whole or in part. This legibility problem appears not to have been submitted to the district court for resolution but only to have been mentioned in the notice of appeal. The Gizas make no argument with respect to this issue in their brief; the FDA represents that it has provided the best copies available, "but has no objection to doing so again." In these circumstances, this matter does not warrant appellate intervention.

*Affirmed.*