831 F.2d 22
 9 Fed.R.Serv.3d 582
 Application for Issuance of Order Requiring the United
States Environmental Protection Agency to Produce
Dr. Thomas Spittler to Testify by
Videotape Deposition.
Appeal of SUN PIPE LINE COMPANY.
 No. 87-1529.
 United States Court of Appeals,
First Circuit.
 Argued Sept. 9, 1987.
Decided Oct. 16, 1987.
Rehearing and Rehearing En Banc Denied Nov. 20, 1987.
 
 Bruce J. Chasan with whom Kenneth Scott, Wilson, Elser, Moskowitz, Edelman & Dicker, Philadelphia, Pa., Richard D. Glovsky and Steven T. Sager, Boston, Mass., were on brief, for appellant.
 Charles J. Sheehan, Dept. of Justice, Land and Natural Resources Div., with whom Martin W. Matzen, Dept. of Justice, Land and Natural Resources Div., Washington, D.C., Thomas E. Hookano, Acting Asst. Atty. Gen., Robert S. Mueller, U.S. Atty., Boston, Mass., and Francis S. Blake, Gen. Counsel, E.P.A., Washington, D.C., were on brief, for appellee E.P.A.
 Before CAMPBELL, Chief Judge, GARTH,* Senior Circuit Judge, and SELYA, Circuit Judge.
 SELYA, Circuit Judge.
 
 
 1
 This chameleon of a case comes before us in a considerably different posture than it originally assumed in the district court. Thus, we recount the factual predicate and evolution of the litigation with exacting care preliminary to our explanation of why we affirm the district court.
 
 
 2
 * In November 1982, a gasoline pipeline near Newtown, Pennsylvania was accidentally punctured and a large quantity of fuel--perhaps as much as 100,000 gallons--escaped. Underground seepage and the spread of noxious fumes followed. In April 1983, a state agency, the Pennsylvania Department of Health, asked a federal official, Dr. Thomas Spittler,[1] to conduct air monitoring in the vicinity of the ruptured pipeline. He did so and reported the results to state health officials.
 
 
 3
 The next month, the oil leak spilled over into the local courts. Homeowners filed a class action suit against Sun Pipe Line Co. (Sun), appellant before us, claiming property damage and various adverse health effects. Several other related civil cases were subsequently filed. The state court eventually certified the class, bifurcated the class action suit, and tried the liability phase. A jury found Sun negligent. The court then designated representative plaintiffs and scheduled trial of their damage claims. In discovery which Sun initiated only after the liability verdict was in, it sought an admission of the truth and authenticity of Dr. Spittler's test results. But, the claimants refused.
 
 
 4
 Little daunted, Sun then requested the EPA to allow Dr. Spittler to star in a videotaped deposition. The Pennsylvania court authorized the taking of the deposition, but never issued a subpoena or otherwise commanded the witness's appearance. Nevertheless, the appellant noticed the deposition without any means of assuring the witness's attendance and sued in the United States District Court for the District of Massachusetts for an order compelling the EPA to produce Dr. Spittler.[2] In the meantime, the agency spurned Sun's request, declining to deliver the witness.
 
 
 5
 After hearing, the district judge rained on Sun's parade. He denied the application in an ore tenus bench decision, essentially on the ground that the district court lacked authority to compel a federal employee like Spittler, in his official capacity, to respond to a state court subpoena.[3] Within a week, Sun abandoned its original theory of the case. It moved for reconsideration, focusing not on the production of Dr. Spittler's body, but on the propriety of EPA's administrative refusal to allow the deposition. In this motion, Sun argued for the first time that the agency action should be set aside as arbitrary and capricious. The district court abjured reconsideration and this appeal ensued.
 
 II
 
 6
 Appellant's current theory of the case is grounded upon twin premises: (1) that EPA's decision not to permit Dr. Spittler to testify is subject to judicial oversight; and (2) that such scrutiny, if undertaken, will demonstrate the irrationality of the agency's action. The first of these premises implicates the coverage of the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. Secs. 701-706 (1983), and most particularly, the imperative of 5 U.S.C. Sec. 701(a). That section prevents judicial interference with agency actions under the APA to the extent that "statutes preclude judicial review," 5 U.S.C. Sec. 701(a)(1), or that such actions have been "committed to agency discretion by law." 5 U.S.C. Sec. 701(a)(2). The appellant's second premise involves whether the agency's declination to make Dr. Spittler available was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(a). This latter issue, of course, need not be addressed unless and until it has been determined that the Sec. 701(a) threshold has been crossed. See Heckler v. Chaney, 470 U.S. 821, 828, 105 S.Ct. 1649, 1654, 84 L.Ed.2d 714 (1984). Because of the clumsy manner in which the instant appeal has been brought before us, we need not resolve even the first of these concerns.
 
 
 7
 When it filed suit in the district court, appellant wanted relief in the nature of mandamus--an order commanding the EPA to produce Dr. Spittler for the taking of a deposition. See supra n. 2. Sun has since acknowledged that it had no entitlement to such an order. Its motion for reconsideration, in Sun's own words, "change[d] the thrust of its action in the district court so as to challenge EPA's refusal to permit the deposition on grounds that such action was violative of the APA, i.e., that it was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law." Appellant's Brief at 13.
 
 
 8
 Notwithstanding that Sun did not denominate any particular rule as the springboard for its reconsideration motion, it is settled in this circuit that a motion which asked the court to modify its earlier disposition of a case because of an allegedly erroneous legal result is brought under Fed.R.Civ.P. 59(e). Silk v. Sandoval, 435 F.2d 1266, 1267-68 (1st Cir.), cert. denied, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (1971). This comports with the weight of authority elsewhere. See, e.g., Vreeken v. Davis, 718 F.2d 343, 345-46 (10th Cir.1983); Miller v. Leavenworth-Jefferson Electric Cooperative, Inc., 653 F.2d 1378, 1380 (10th Cir.1981); United States Labor Party v. Oremus, 619 F.2d 683, 687 (7th Cir.1980); Smith v. Hudson, 600 F.2d 60, 62-63 (6th Cir.), cert. denied, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979); Sonnenblick-Goldman Corp. v. Nowalk, 420 F.2d 858, 859 (3d Cir.1970). Sun's motion for reconsideration served as a vehicle for suggesting a new and different legal theory as a means of undoing the original denial of relief--no more, no less. However ambiguous the motion may have been as to its provenance, the district court was entitled to scrutinize it under Rule 59(e). And appellate review must tread the same path.
 
 III
 
 9
 This checkered procedural history brings us to what we see as the crux of the matter. Inasmuch as Sun's original initiative was concededly misguided, its present appeal must stand or fall on the propriety of the district court's rejection of the reconsideration motion. Correspondingly, the scope of our review extends only to the appropriateness of that denial--not to the fundamental correctness of the underlying judgment.
 
 
 10
 We have repeatedly held that, once the ball has ended, the district court has substantial discretion in deciding whether to strike up the band again in order to allow the losing party to argue new material or a new theory. See Polyplastics, Inc. v. Transconex, Inc., 827 F.2d 859, 864 n. 4 (1st Cir.1987); Willens v. University of Massachusetts, 570 F.2d 403, 406 (1st Cir.1978); Pagan v. American Airlines, Inc., 534 F.2d 990, 992-93 (1st Cir.1976). Consequently, we will not overturn the trial court's decision on such a matter unless the appellant can persuade us that the refusal to grant the motion was a manifest abuse of discretion. See id. at 993. Whatever view may be taken of the underlying merits of the case, the abuse-of-discretion argument simply will not wash.
 
 
 11
 If, as the government contends, 5 U.S.C. Sec. 301 (1982)[4] so commits personnel deployment decisions (such as the EPA's withholding of Dr. Spittler) to the agency's unfettered discretion--because the statute is "drawn in such broad terms that in a given case there is no law to apply," Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 410, 91 S.Ct. 814, 821, 28 L.Ed.2d 136 (1971) (quoting S.Rep. No. 752, 79th Cong., 1st Sess. 26 (1945))--then judicial review does not lie.[5] In that event, the district court had no discretion to abuse. Being bereft of jurisdiction, the court was duty bound to reject the requested reconsideration.
 
 
 12
 The flip side of the coin, however, presents no rosier a picture for the appellant. Sun's bedrock position is that, by adopting regulations governing the extent to which agency employees may testify in private litigation, see 40 C.F.R. Secs. 2.401 et seq., EPA has constrained agency discretion in such a way as to make exercises of it judicially reviewable. If we were to assume arguendo that this were so, it would not stem the tide. After all, the appellant's request for Dr. Spittler's testimony did not conform to these regulations,[6] the complaint which Sun filed in this action contained no charge of arbitrariness, and the motion to reconsider--though it contained such a charge--offered precious little to substantiate it. In point of fact, the prime "evidence" on which Sun relies in its effort to establish an abuse of discretion comprises some two dozen addenda which it has cavalierly attached to its appellate brief--material which was never presented to the district court and which constitutes no proper part of the record on appeal. We cannot--and will not--consider such belated proffers. See United States v. Kobrosky, 711 F.2d 449, 457 (1st Cir.1983) ("evidentiary matters not first presented to the district court are, as the greenest of counsel should know, not properly before [an appellate court]"). So, even if there is some possible argument to be made for judicial oversight of EPA's alleged failure to abide by its own regulations governing the role of its personnel in private litigation--a matter as to which we intimate no opinion--there is no principled way in which the district court, in the circumstances of this case, can be said to have abused its discretion. Given what had transpired, the court was comfortably within its rights in refusing to take yet another look when the appellant belatedly shifted gears.
 
 IV
 
 13
 We are aware that Sun--citing the press of the state court litigation--would have us sweep procedural niceties under the rug and reach the merits of its protean claim. But, jettisoning established rules to suit the fancy of individual litigants is not a step to be taken lightly under any circumstances. In this situation, it is not a step to be taken at all. Our canvass of the record indicates that any exigency which now obtains is largely of Sun's own invention.
 
 
 14
 We note, first, that no request for authentication of the test results under 40 C.F.R. Sec. 2.406 has ever been tendered. Nor has Sun attempted to engage Dr. Spittler as a privately-retained expert. See 40 C.F.R. Secs. 2.401(b)(3), (c). Moreover, the EPA official conducted his monitoring in April 1983, and Sun was aware of the testing early on. The homeowners' litigation was instituted in May 1983. The record reflects that Sun's attorneys were in direct contact with Dr. Spittler no later than September 11, 1984 and obtained what the scientist called the "relevant parts" of his file no later than November 2, 1984. Nonetheless, Sun chose to wait until February 1987 before requesting the state plaintiffs to admit the authenticity and accuracy of the witness's report, and until April 1987 to ask the EPA to make him available. Even after the adverse verdict had been returned in the liability phase of the class action, Sun lingered in the clouds, motionless, for some four months. Having indulged in such lassitude, the appellant can scarcely be heard to complain that established procedure should be discarded in order that it might extricate itself from a self-constructed box. If Sun has been hoist at all, it has been hoist with its own petard.
 
 V
 
 15
 We need go no further. There are known hazards involved in changing horses in the middle of the stream. Sun's fall from the saddle and the consequent dousing of its late-mounted aspirations mirror those entirely predictable risks. We conclude that the district court, in denying the appellant's motion for reconsideration, did not misuse its discretion in any respect.
 
 
 16
 Affirmed.
 
 
 
 *
 Of the Third Circuit, sitting by designation
 
 
 [1]
 Dr. Spittler was then, and apparently still is, Chief, Technical Support Branch, Environmental Services Division, Region I Laboratory of the federal Environmental Protection Agency (EPA). Region I is headquartered in Massachusetts, thus explaining the appellant's choice of venue
 
 
 [2]
 The sole relief prayed for in the complaint was "an order requiring the Environmental Protection Agency to produce Dr. Thomas Spittler for a videotaped deposition." The complaint was never amended
 
 
 [3]
 The district court, in so ruling, relied principally upon our decision in Giza v. Secretary of HEW, 628 F.2d 748, 751-52 (1st Cir.1980). Given the gravamen of the appellant's case as it then stood, Giza was clearly controlling. See generally United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed.2d 417 (1951)
 
 
 [4]
 5 U.S.C. Sec. 301 provides in pertinent part that:
 The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property....
 
 
 [5]
 We recognize that even actions "committed to agency discretion," 5 U.S.C. Sec. 701(a)(2), may be subject to limited judicial review under special circumstances. E.g., Califano v. Sanders, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977) (access to the court for constitutional challenges to administrative action not barred). But, Sun does not assert that any such exception applies in the circumstances of this case
 
 
 [6]
 To offer but one example, under the regulations the requestor must state the nature of the envisioned testimony and "the reasons why the testimony would be in the interests of EPA." 40 C.F.R. Sec. 2.403. The request letter which Sun forwarded on April 3, 1987 provided absolutely no hint of a clue of a suggestion of a reason why Dr. Spittler's proposed testimony would be in the agency's interest