USCA1 Opinion

 

 November 3, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1341 UNITED STATES OF AMERICA, Appellant, v. LESLIE ROBERTS, Defendant, Appellee. _________________________ ERRATA SHEET ERRATA SHEET The opinion of the Court issued on October 26, 1992, is corrected as follows: page 10, last line insert "of" between "all" and "these" page 11, line 1 substitute "the list of factors" for "it"October 26, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 92-1341 UNITED STATES OF AMERICA, Appellant, v. LESLIE ROBERTS, Defendant, Appellee. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. Gene Carter, U.S. District Judge] ___________________ ________________________ Before Breyer, Chief Judge, ___________ Torruella and Selya, Circuit Judges. ______________ _________________________ Margaret D. McGaughey, Assistant United States Attorney, ______________________ with whom Richard S. Cohen, United States Attorney, and Jonathan ________________ ________ A. Toof, Assistant United States Attorney, were on brief, for _______ appellant. Richard S. Emerson, Jr., with whom Childs, Emerson, ___________________________ _________________ Rundlett, Fifield & Childs was on brief, for appellee. __________________________ _________________________ _________________________ SELYA, Circuit Judge. The government appeals from an SELYA, Circuit Judge. ______________ order entered in the United States District Court for the District of Maine granting, and sustaining upon reconsideration, the defendant's motion to suppress evidence. That order was entered not on the merits, but by reason of the government's failure to file a timely response to the defendant's suppression motion. We vacate the order and remand with directions to hear and determine the suppression motion. I. BACKGROUND I. BACKGROUND The facts relevant to the disposition of this appeal are largely undisputed. They can be succinctly summarized. On January 16, 1992, a two-count indictment was returned against defendant-appellee Leslie Roberts. Count I alleged manufacture of more than 1,000 marijuana plants in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(A) (1988 & Supp. II 1990).1 Count II alleged possession of marijuana with intent to distribute in violation of the same statutes. On Friday, February 21, 1992, Roberts' counsel filed a substantial motion to suppress evidence, addressing a copy to the prosecution. According to regular office procedure, Friday's outgoing mail was hand-carried to the post office either that day or the next business day (Monday, February 24). On Monday, defense counsel advised the prosecutor that the motion had been filed and should ____________________ 121 U.S.C. 841(a)(1) criminalizes, inter alia, the _____ ____ "manufacture" of "a controlled substance." We have recently held that growing marijuana falls squarely within this proscription. See United States v. One Parcel of Real Property (Great Harbor ___ _____________ ___________________________________________ Neck), 960 F.2d 200, 205 (1st Cir. 1992). ____ 3 arrive in that day's mail. The government never received the mailed papers. On Wednesday, February 26, the prosecutor requested another set. Defense counsel immediately forwarded copies by facsimile transmission. Under the applicable local rule, objections to filed motions must themselves be filed within ten days.2 On March 10, the district court, concluding that the response period had elapsed, summarily granted the motion to suppress. Later that same day, the government moved for reconsideration, informing the court that its response to the suppression motion would be filed instanter and explaining that its failure to object at an earlier date resulted from an interpretation of Local Rule 19(c) that differed from the district court's interpretation. The next day, the government filed its opposition to the motion to suppress. On reconsideration, the district court accepted the prosecutor's explanation at face value, finding that the government's bevue "was the result of a misinterpretation of Local Rule 19 and of ignorance of its precise requirements." The court, however, decreed that these circumstances constituted neither "good cause" nor "excusable neglect" sufficient to justify relieving the government "from the consequence of untimely filing." This interlocutory appeal followed. We have jurisdiction under 18 U.S.C. 3731(1988). ____________________ 2The rule states: "Unless within 10 days after the filing of a motion the opposing party files a written objection thereto, he shall be deemed to have waived objection." D. Me. Loc. R. 19(c). Local Rule 19(c) applies in civil as well as criminal cases. See D. Me. Loc. R. 1(a). ___ 4 II. A PROCEDURAL QUAGMIRE II. A PROCEDURAL QUAGMIRE Depending on how one reads the relevant rules, there are several possible ways to assess the extent of the government's delay. According to the letter of Local Rule 19(c), the ten-day response period began on "filing," February 21. Excluding intermediate weekends, see Fed. R. Crim. P. 45(a) ___ ("When a period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."), the government's objection to the motion was due by day's end on March 6. The government moved to reconsider on March 10 and filed its objection to the suppression motion on March 11. Under this scenario, then, the government's motion was four days late and its opposition five days late. But, there is more. Both sides agree that the government was entitled to an additional three days under Fed. R. Crim P. 45(e). The rule grants a three-day extension "[w]henever a party has the right or is required to do an act within a prescribed period after the service of a notice or other paper upon that party and the notice or other paper is served by mail." Fed. R. Crim. P. 45(e). Local Rule 19(c), however, appears to emphasize filing, not service, and, notwithstanding the parties' ______ _______ agreement, we think it is an open question whether Rule 45(e) applies in a case where the obligation to act is triggered by filing rather than by service. Assuming that the local rule is interpreted as allowing 5 an act to be done upon service,3 thus forcing Rule 45(e) into play, the response deadline is still problematic. The defendant's interpretation is that the government would then have had a total of thirteen days within which to file its opposition. Since the prescribed period has now grown to more than eleven days, the defendant argues, intermediate weekends should be included in the count and the government should have filed its opposition no later than March 5. See 3A Charles A. Wright, ___ Federal Practice and Procedure 755, at 98 (2d ed. 1982). So _______________________________ viewed, the three-day extension is no extension at all; it leaves the government with one less day in which to object than the government would have enjoyed had the motion been served personally a paradoxical result that frustrates the core purpose of Rule 45(e). On the other extreme, one might interpret the service- by-mail extension as a period separate and apart from the ten-day response period. After all, each is "a period of time prescribed or allowed [that] is less than 11 days." Fed. R. Crim. P. 45(a). So construed, weekends would be excluded from the count entirely. ____________________ 3We are of the opinion that a protocol in which service, rather than filing, triggers the obligation to respond would be far more conventional and far more logical. Rules requiring a response within a specified period after service or notice abound. E.g., Fed. R. Civ. P. 12(a) (answer to complaint, cross- ____ claim, or counterclaim), 12(e) (response to order for more definite statement), 45(c)(2)(B) (objection to subpoena); Fed. R. Crim. P. 12.1(b) (response to alibi defense), 12.3(a)(2) (reply to demand for witness list), 32.1(b) (objection to probation terms). Calculating a response period from the date of service or notice is a commonly used device because such a paradigm prevents a party from forfeiting an objection to a motion or other pleading about which it had no knowledge. 6 On this hypothesis, the prosecution was not tardy at all; its opposition to the suppression motion was not due until March 11. Perhaps the most sensible way to dispel this cloud cover is to treat the weekend-exclusion provision of Rule 45(a) as applying only to those periods of time in which a party is expected to do something. The three days that Rule 45(e) allots for service by mail is a period in which a respondent is required to do nothing but wait for service. If we were to exclude weekend days from the ten-day response period but count them for the three-day period allotted for mail service, the objection would have been due on March 9, leaving the government only one day behind in moving to reconsider and two days behind in opposing the suppression motion. The calculations we have been discussing in the three immediately preceding paragraphs are based on the assumption that service, rather than filing, pulls the trigger under Local Rule 19(c), thus implicating Rule 45(e). On that assumption, the litany of problems is by no means finished. "Service by mail is complete upon mailing." Fed. R. Civ. P. 5(b). In retrospect, defense counsel cannot say whether the motion was actually mailed on Friday, February 21, or on Monday, February 24. If the ten- day response period and the three days for service by mail are counted from February 21, the government was probably in arrears; if those periods are counted from February 24, or if the actual receipt of the documents by facsimile transmission on February 26 constituted service, then the government probably did not miss 7 its deadline at all. In the midst of this babelism, one thing is perfectly plain: the district court's order ought to be vacated.4 Viewing the record in the light most favorable to the defendant, and making almost every intermediate interpretive decision in his favor we except only the counter-intuitive paradox discussed supra p.5 the government moved to reconsider no more than four _____ days after its opposition to the suppression motion was due and filed the opposition on the very next day. Even assuming, arguendo, this worst-case scenario an assumption on which we base the remainder of our opinion the ruling below cannot pass muster. III. STANDARD OF REVIEW III. STANDARD OF REVIEW A district court possesses great leeway in the application and enforcement of its local rules. See United ___ ______ States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir.), cert. ______ ______________ _____ denied, 493 U.S. 862 (1989); Aggarwal v. Ponce School of ______ ________ _________________ Medicine, 745 F.2d 723, 726 (1st Cir. 1984); Hawes v. Club ________ _____ ____ ____________________ 4We think it is equally plain that the district court's local rule should be clarified. Literal application of the rule as written would, in many cases, prove unfair to litigants. Specifically, the district court should consider amending the local rule to state clearly whether a response is due from date of filing or date of service and, if the former, what the consequence of lack of notice to the respondent entails. We also hope the district court will clarify that weekends are to be excluded from the computation of the ten-day response period. Finally, the court may wish to clarify whether the three-day period provided in Rule 45(e) can extend the ten-day limit and, if so, whether those additional three days exclude weekends. 8 Ecuestre El Comandante, 535 F.2d 140, 143-44 (1st Cir. 1976). _______________________ This discretion, though broad, is not unbridled. See Aggarwal, ___ ________ 745 F.2d at 726-27; Wirtz v. Hooper-Holmes Bureau, Inc., 327 F.2d _____ __________________________ 939, 943 (5th Cir. 1964). We review the trial court's refusal to grant relief on reconsideration for possible abuse of discretion.5 In making discretionary judgments, a district court abuses its discretion when a relevant factor deserving of significant weight is overlooked, or when an improper factor is accorded significant weight, or when the court considers the appropriate mix of factors, but commits a palpable error of judgment in calibrating the decisional scales. See Independent ___ ___________ Oil and Chem. Workers of Quincy, Inc. v. Procter & Gamble Mfg. ______________________________________ ______________________ Co., 864 F.2d 927, 929 (1st Cir. 1988); In re San Juan Dupont ___ ______________________ Plaza Hotel Fire Litig., 859 F.2d 1007, 1019 (1st Cir. 1988); ________________________ United States v. Hastings, 847 F.2d 920, 924 (1st Cir.), cert. ______________ ________ _____ denied, 488 U.S. 925 (1988). ______ IV. ANALYSIS IV. ANALYSIS This appeal arises in a peculiar procedural posture. ____________________ 5As a technical matter, the court below agreed to reconsider but then refused to alter its earlier order. This maneuver does not affect the standard of review. The denial of a motion for reconsideration is reviewable for abuse of discretion. See ___ Odishelidze v. Aetna Life & Casualty Co., 853 F.2d 21, 25 (1st ___________ __________________________ Cir. 1988) (per curiam); In re Sun Pipe Line Co., 831 F.2d. 22, ________________________ 26 (1st Cir. 1987), cert. denied, 486 U.S. 1055 (1988). The _____ ______ denial of a motion for leave to file an objection or other pleading out of time is measured by the same yardstick. See ___ Pontarelli v. Stone, 930 F.2d 104, 112 (1st Cir. 1991); Taumby v. __________ _____ ______ United States, 902 F.2d 1362, 1367 (8th Cir. 1990); Clinkscales ______________ ___________ v. Chevron U.S.A., Inc., 831 F.2d 1565, 1568-69 (11th Cir. 1987); ____________________ Ham v. Smith, 653 F.2d 628, 630-31 (D.C. Cir. 1981). ___ _____ 9 Ordinarily, a district court faced with a motion to reconsider must apply an interests-of-justice test. In Greene v. Union Mut. ______ __________ Life Ins. Co., 764 F.2d 19 (1st Cir. 1985), a case which involved _____________ the requested reconsideration of a dismissal order entered because plaintiff failed to file a timely response to defendant's motion to dismiss, we ruled that, when reconsideration of an earlier ruling is requested, the district court should place great emphasis upon the "interests of justice." Id. at 23. This ___ is so, we reasoned, because such requests for reconsideration rely, in the last analysis, on the trial court's inherent power to afford relief from interlocutory decisions "as justice requires." Id. at 22 (citation and internal quotation marks ___ omitted). The wrinkle that distinguishes this case is that, rather than denying the motion to reconsider, as in Greene, the ______ court below granted the motion to reconsider but then affirmed its original ruling. See supra note 5. It can be argued that, ___ _____ in so doing, the court treated the motion to reconsider as a motion for an extension of time, thus bringing Fed. R. Crim. P. 45(b)(2) to the fore.6 Rule 45(b)(2) provides that when an act is required to be completed within a specified time, the court "for cause shown" may, "upon motion made after expiration of the specified period," extend the deadline if the movant's failure to ____________________ 6By contrast, in Greene we specifically noted that Fed. R. ______ Civ. P. 60(b), with its "excusable neglect" standard, did not apply because the defendant had moved merely to dismiss certain counts, not to dismiss the entire case. Greene, 764 F.2d at 22. ______ 10 act resulted from "excusable neglect." We do not choose to enter into a purely academic debate over the controlling standard. Excusable neglect is a flexible concept. In this case, as we demonstrate below, its parameters are informed by, and roughly congruent with, the interests of justice. (It would, after all, make very little sense to allow reconsideration because justice requires, only to reassess the underlying procedural default on some standard totally divorced from the interests of justice.) Hence, we proceed to analyze the lower court's rulings under both rubrics, mindful, withal, that in the end the two standards coalesce. A. Interests of Justice A. Interests of Justice ____________________ Justice is an ideal that defies precise definition. It is, therefore, impossible to list a series of integers that will necessarily dominate the interests-of-justice equation in every case. We can, however, offer certain rules of thumb to guide the district courts. In determining this motion to reconsider the court's response to the belated filing before us, it would have helped had the district court examined the following seven factors: (1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying the tardiness, (4) the character of the omission, (5) the existence vel non of cognizable prejudice to ___ ___ the nonmovant in consequence of the omission, (6) the effect of granting (or denying) the motion on the administration of justice, and (7) whether the belated filing would, in any event, 11 be more than an empty exercise. We emphasize these particular factors because they assist in demonstrating that there was no reasonable basis for the district court to deny the government's request. The list is merely illustrative. We do not say that courts must necessarily look at each and all of these factors in every case, or that courts cannot, in a proper case, examine other factors. At any rate, the list of factors will require tailoring to reflect the nature of the ruling that underlies the motion to reconsider. Because an interests-of-justice test covers considerable ground, the trial court should strive to acquaint itself with the totality of the relevant circumstances. By the same token, an appellate court called upon to review such a determination must take a panoramic view. We do so here. 1. Nature of the Case. This is a criminal case and, 1. Nature of the Case. ___________________ importantly, a criminal case involving serious accusations. The defendant was charged with manufacturing marijuana and with possessing it for the intended purpose of commercial distribution. There is a strong public interest in adjudicating felony cases on the merits. See Hastings, 847 F.2d at 925. ___ ________ Moreover, "[t]he graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence." Id.7 ___ ____________________ 7We understand that, in granting the defendant's motion, the district court did not dismiss the indictment, but instead suppressed evidence. The government has argued, however, that the material suppressed the government's entire storehouse of physical evidence (including 2,577 marijuana plants, eight firearms, a substantial sum of money, etc.) and evidence of the defendant's admissions of guilt is of such importance that, 12 Because drug-trafficking cases are by their very nature extremely serious, this factor cuts sharply in favor of the government's position (just as the seriousness of the penalty would cut the other way in a case in which the defendant had missed a filing deadline). 2. Degree of Tardiness. The length of a supplicant's 2. Degree of Tardiness. ___________________ delay is often a key factor in deciding whether to permit a pleading to be filed out of time. The longer a litigant dawdles, the less incentive exists for a court to reconsider. See In re ___ _____ Sun Pipe Line Co., 831 F.2d 22, 26 (1st Cir. 1987), cert. denied, _________________ _____ ______ 486 U.S. 1055 (1988). Here, however, on a worst-case scenario, the government was only four days late in requesting extra time and five days late in filing its opposition to the suppression motion. Thus, the delay was brief and the degree of tardiness, if any, was correspondingly slight. This factor, too, favors the government. 3. Reasons for Tardiness. We look next to the reasons 3. Reasons for Tardiness. _____________________ underlying the procedural default. The district court credited the prosecutor's explanation, but adopted a dismissive attitude, literally and figuratively, discerning no excusable neglect. We question the supportability of this conclusion. As we have pointed out, see supra Part II, the interlocking rules that ___ _____ govern computation of time in this situation are freighted with ____________________ unless the order is vacated, the case cannot be successfully prosecuted. The defendant has not disagreed with this assessment. Hence, we regard the order appealed from as the functional equivalent of an order for dismissal. 13 ambiguity. Bearing in mind that good cause "is a mutable standard, varying from situation to situation," Coon v. Grenier, ____ _______ 867 F.2d 73, 76 (1st Cir. 1989), we think the lower court probably undervalued the worth of appellant's explanation. 4. Character of the Omission. In determining whether 4. Character of the Omission. _________________________ to hold a litigant to a nonjurisdictional procedural default, the presence or absence of willfulness is invariably a salient consideration. See, e.g., Velazquez-Rivera v. Sea-Land Serv., ___ ____ ________________ _______________ Inc., 920 F.2d 1072, 1076 (1st Cir. 1990) (holding that, in ____ connection with sanctions, an innocent mistake "must be distinguished from more deliberate . . . delays in filing [papers]"). The nisi prius court should always investigate the degree of culpability, asking whether the omission was deliberate or accidental, grossly negligent or merely careless. In this case, the government's delay was not intentional. It resulted from a simple mistake one that was fully understandable in light of the local rule's ambiguity. The omission was not a byproduct of bad faith or reckless disregard of responsibilities owed to the court.8 We have said in an analogous context that "[r]andom negligence, while not to be condoned, is less blameworthy than purposeful misconduct." Hastings, 847 F.2d at 925. Given the nature of the lapse, we ________ ____________________ 8Indeed, the record reveals that diligence, rather than dilatoriness, typified the government's behavior. The government was prompt in notifying the defendant that it had not received the relevant documents, in reporting its position to the court as soon as it was notified that the court considered the response period to have expired, and in filing a reply to the suppression motion immediately thereafter. 14 count this factor as close to neutral. 5. Prejudice. We next inquire whether the interlude 5. Prejudice. _________ caused cognizable prejudice. See Velazquez-Rivera, 920 F.2d at ___ ________________ 1078; cf. Greene, 764 F.2d at 23. There is absolutely no ___ ______ evidence that a four- or five-day delay hampered prosecution of the motion to suppress, threatened to stall the trial, or interfered with appellee's defense. Nor is there any showing that appellee will be unfairly harmed should the motion be argued now. Since we have consistently declined either to infer prejudice from the mere passage of time (particularly a short period of time) or to hold that simply requiring a party to litigate amounts to prejudice, see Coon, 867 F.2d at 77, we place ___ ____ this factor in the government's column. 6. Institutional Interests. The court, too, has a 6. Institutional Interests. _______________________ significant interest in the punctilious observation and strict enforcement of its procedural rules, including temporal requirements. See In re Sonoma V, 703 F.2d 429, 432 (9th Cir. ___ _______________ 1983) (noting that strict enforcement of time constraints may prove necessary to allow a court "responsible for the condition of its docket and for the speed with which it administers justice" to ensure "a proper flow of judicial business") (citation omitted). While we think this factor deserves great weight, we note that, in the instant case, there is no evidence that delayed consideration of the suppression motion's merits would have burdened judicial resources or interfered with the court's administration of its docket. In the absence of other 15 considerations, the fact that the case was in its embryonic stages argues persuasively against granting a dispositive motion solely on the ground of a rather minimalistic period of inadvertent delay. Cf., e.g., Velazquez-Rivera, 920 F.2d at ___ ____ ________________ 1077; Coon, 867 F.2d at 76. ____ 7. Utility of the Pleading. We have indicated in 7. Utility of the Pleading. _________________________ related settings that weight should be attached to the likelihood of success if the party moving for reconsideration is allowed to revisit the underlying issue. See Mackin v. Boston, 969 F.2d ___ ______ ______ 1273, 1279 (1st Cir. 1992). Here, the government claims that it has a meritorious argument against suppression. At first blush, its position is plausible. While we take no view of the merits of the suppression motion, we are unable to conclude at this early stage that the proffered opposition is necessarily futile or a waste of time. Thus, this factor cuts the government's way. 8. Recapitulation. The clear majority of the 8. Recapitulation. ______________ pertinent factors (perhaps as many as six out of seven) militates in favor of reconsideration and reversal. The defendant has identified no countervailing factors and we can think of none. Indeed, the balance of justice seems to weigh more heavily in this case than in Greene (a case in which the movant was afforded ______ some relief). Greene was six days late in responding to a defense motion; here, the government, if late at all, fomented an even shorter period of delay. Moreover, this is a criminal, not a civil, case; and unlike Greene, appellant proffers sympathetic 16 reasons for its tardiness.9 B. Excusable Neglect B. Excusable Neglect _________________ If we treat the lower court's ruling as the functional equivalent of a refusal to allow the government to file an opposition out of time, the defendant fares no better. Since Fed. R. Civ. P. 6(b)(2) uses language virtually identical to that of Fed. R. Crim. P. 45(b)(2), decisions construing the civil rule are instructive in determining what constitutes cause or excusable neglect under its criminal analogue. See Fed. R. Crim. ___ P. 45 advisory committee note (1944) (explaining that because Criminal Rule 45 "is in substance the same as [Civil Rule 6] . . . matters covered by this rule should be regulated in the same manner for civil and criminal cases"); 3A Wright, supra, 751, _____ at 92-93 (stating that Civil Rule 6 "may usefully be consulted in determining the meaning of [Criminal Rule 45]"). In general, mistake or inadvertence as to the meaning of a rule is not a sufficient reason to grant a belated application for more time. See, e.g., Spear, Leeds & Kellogg v. ___ ____ ______________________ Public Serv. Co., 700 F. Supp. 791, 794 (S.D.N.Y. 1988). __________________ Nonetheless, ambiguity in a rule or court order can give rise to excusable neglect sufficient to warrant an extension of time. See, e.g., De Santa v. Nehi Corp., 171 F.2d 696, 698 (2d Cir. ___ ____ _________ ___________ 1948); Spear, 700 F. Supp. at 794. In this case, the meaning of _____ the local rule and its interplay with the criminal rules is ____________________ 9In Greene, plaintiff's counsel said that he was "on 'quasi- ______ vacation,'" that he "'misunderstood' defendant's counsel," and that "his office procedures broke down." Greene, 746 F.2d at 23. ______ 17 logogriphic. Thus, government counsel's inability to anticipate, and conform strictly to, the district court's less-than-obvious interpretation of the requirements of Local Rule 19(c) strikes us as excusable within the meaning of Rule 45(b). Moreover, case law in this circuit and beyond reveals that the excusable neglect standard, in a situation like this one,10 embodies a need to consider a matrix of factors not materially different from those we have canvassed in connection with the interests-of-justice standard, e.g., the significance of ____ the delay, see Coady v. Aguadilla Terminal Inc., 456 F.2d 677, ___ _____ _______________________ 678 (1st Cir. 1972), prejudice to the other party, see Staggers ___ ________ v. Otto Gerdau Co., 359 F.2d 292, 296 (2d Cir. 1966), and bad ________________ faith, see Tatterson v. Koppers Co., 104 F.R.D. 19, 20 (W.D. Pa. ___ _________ ___________ 1984); Vandervelde v. Put & Call Brokers & Dealers Ass'n, 43 ___________ _____________________________________ F.R.D. 14, 20 (S.D.N.Y. 1967). As we have previously pointed out, see supra Part IV(A), these factors counsel, with near ___ _____ unanimity, in favor of permitting the government to file its objection out of time. C. Totalling the Account C. Totalling the Account _____________________ ____________________ 10The Ninth Circuit, in an analogous context, urged lower courts to "apply[] a liberal definition of 'excusable neglect'" and suggested a broad range of factors that might properly be considered in attending to the task. In re Magouirk, 693 F.2d _______________ 948, 951 (9th Cir. 1982) (discussing excusable neglect in connection with former Bankruptcy Rule 924). The Fifth Circuit took much the same tack in Hibernia Nat'l Bank v. Administracion ___________________ ______________ Central Sociedad Anonima, 776 F.2d 1277, 1280-81 (5th Cir. 1985) ________________________ (discussing excusable neglect in the context of Civil Rule 60(b)(1)). The factors mentioned in Magouirk and Hibernia bear a ________ ________ strong family resemblance to the factors we have enumerated in our interests-of-justice analysis. 18 We do not think it makes a difference in this case which standard the district court applied (or should have applied). The excusable neglect standard often acquires an "interests of justice" gloss. See Coady, 456 F.2d at 678-79 ___ _____ (holding that the "delay in filing a cost bond, where no other action had taken place, is so insignificant and so unprejudicial in any sense, that we think in justice it should be excused") __ _______ (emphasis supplied); cf. Hibernia Nat'l Bank v. Administracion ___ ____________________ ______________ Central Sociedad Anonima, 776 F.2d 1277, 1281 (5th Cir. 1985) _________________________ (discussing excusable neglect in terms of the "interest of justice"). This is such a case. Given the collocation of circumstances, we believe that the district court, on either standard, abused its discretion in two ways. First, the court apparently failed to weigh all the proper factors in reaching its decision. Beyond this likelihood, we are convinced that, in granting the suppression motion pro ___ forma and adhering to its order after receiving a credible _____ explanation of what had gone wrong, the court below committed a mistake of judgment that cannot be allowed to stand. When the appropriate elements are placed on the scale, the balance tips dramatically in favor of reconsidering and allowing the opposition to be filed. Put another way, the government showed sufficient cause to excuse its failure to respond more celeritously to the suppression motion. V. CONCLUSION V. CONCLUSION 19 We need go no further.11 This is a serious criminal case. At the very worst, the government inadvertently missed a filing deadline in a situation where a miasma of doubt surrounded the proper interpretation and interplay of the relevant rules. Hence, the government had a plausible reason for the error. It informed the court immediately upon recognition of its possible mistake and filed the omitted response the very next day (no more than five days after it was due). The record reveals no history of recalcitrance, sloppiness, or sharp practice on the government's part. There is no suggestion of cognizable prejudice to the defendant or burden to the court's schedule. In these circumstances, stony adherence to the district court's debatable interpretation of Local Rule 19(c) was unwarranted. Vacated and remanded. Vacated and remanded. ____________________ ____________________ 11Because we conclude that the district court abused its discretion in failing to reconsider and accept the government's opposition out of time, we need not address the government's contention that, notwithstanding the lack of a timely opposition, the district court was nevertheless required to review defendant's motion on the merits before suppressing the evidence. 20