February 11, 1993 UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 92-2060

ALFONSO SERRANO-PEREZ AND LUZ DE DIEGO-R OS,

Plaintiffs, Appellants,

v.

FMC CORPORATION, MONSANTO COMPANY, AND ICI AMERICAS, INC.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, U.S. District Judge]

Before

Breyer, Chief Judge,

Campbell, Senior Circuit Judge,

and Bownes, Senior Circuit Judge.

Raymond Rivera-Esteves, with whom Juan A. Hernandez-Rivera

was on brief, for appellants.
Jorge Luis-Cordova, with whom Rivera, Tulla & Ferrer was on

brief, for ICI Americas, Inc., appellee.

February 11, 1993

BOWNES, Senior Circuit Judge. Plaintiffs-

appellants raise two issues on appeal: (1) whether the

district court properly granted summary judgment for

defendant-appellee because of lack of evidence of causation;

and (2) whether the district court abused its discretion in

denying plaintiffs' motion for reconsideration of the summary

judgment. We affirm the district court on both issues.

I.

THE DISTRICT COURT PROCEEDINGS

On November 14, 1990, the plaintiffs, father and

mother of Carlos Serrano de Diego, filed a complaint against

defendant-appellee, ICI Americas, Inc., ("ICI") and others.

There has been no appeal as to the other defendants. The

complaint states that it is "based on negligence in failure

to adequately warn and strict liability." It alleges that

plaintiffs' son, Carlos, was a farm worker for ten years and

as such was required to come into contact with "chemicals

and/or agricultural products" manufactured by the defendants.

The complaint states that the chemicals and/or agricultural

products with which Carlos Serrano came in contact "are

unknown at this time." The complaint alleges that as a

result of coming in contact with the chemicals and

agricultural products manufactured by defendants, Carlos

Serrano developed "an aplastic anemia that culminated in his

-2-

death" on January 4, 1990. Damages of three million dollars

were sought.

In its answer, ICI admitted that it manufactures

and sells agricultural chemical products and conducted

business in Puerto Rico. It specified that it manufactured

and sold agricultural products under the trade name Gramaxone

from 1985 to 1987.

On August 2, 1991, the district court ordered that

discovery be concluded by December 31, 1991. A deadline was

set for the disclosure of expert witnesses. On September 26,

1991, all parties brought a joint motion requesting an

extension of the discovery cut-off date to March 31, 1992.

The court responded in October of 1991 by granting a

discovery extension to February 5, 1992. Trial was set for

May 11, 1992.

On April 28, 1992, the court granted defendants'

motions for summary judgment. On May 13 plaintiffs filed a

motion for reconsideration of the summary judgment; it was

denied on August 4, 1992.

II.

SUMMARY JUDGMENT

We review a summary judgment de novo. We read the

record and all reasonable inferences to be drawn therefrom in

the light most favorable to the non-moving party. E.H.

Ashley & Co. v. Wells Fargo Alarm Services, 907 F.2d 1274,

-3-

1277 (1st Cir. 1990). Summary judgment is mandated "if the

pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c). "[S]ummary judgment

will not lie if the dispute about a material fact is

'genuine,' that is, if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Under Rule 56(e):

. . . When a motion for summary judgment
is made and supported as provided in this
rule, an adverse party may not rest upon
the mere allegations or denials of the
adverse party's pleading, but the adverse
party's response, by affidavits or as
otherwise provided in this rule, must set
forth specific facts showing that there
is a genuine issue for trial. If the
adverse party does not so respond,
summary judgment, if appropriate, shall
be entered against the adverse party.

"The mere existence of a scintilla of evidence in support of

the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the

plaintiff." Anderson, 477 U.S. at 252.

. . . In our view, the plain language of
Rule 56(e) mandates the entry of summary
judgment, after adequate time for
discovery and upon motion, against a
party who fails to make a showing
sufficient to establish the existence of
an element essential to that party's

-4-

case, and on which that party will bear
the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In its opinion and order granting summary judgment

for the defendants the court noted that defendants presented

the testimony of six expert witnesses to the effect that

there was no causal connection between any of defendants'

pesticides and aplastic anemia. Defendants also submitted

medical literature to the court showing that there was no

causal link between aplastic anemia and defendants'

pesticides. The court further found that plaintiffs had not

presented any expert testimony indicating that defendants'

pesticides caused aplastic anemia.

We have scoured the record thoroughly, including

statements in Carlos Serrano's hospital records that were

excluded by the district court, and have found nothing that

would engender a genuine issue of material fact.1 There was

no expert testimony or medical literature offered by

plaintiffs tending to establish a causal link between

defendants' pesticides and aplastic anemia. It is true that

the excluded hospital records indicated a link between

pesticides and Carlos Serrano's illness. But there was no

evidence that any of the pesticides manufactured by the

1 We do not intimate that the district court erred in
excluding the portions of the hospital records offered in
evidence.

-5-

defendants could have caused aplastic anemia. More to the

point, there was no evidence offered by plaintiffs

implicating Gramaxone, which was manufactured by the sole

remaining defendant - ICI Americas, Inc. - as a causative

agent of aplastic anemia. The district court concluded its

summary judgment order as follows:

Plaintiffs in this case have offered
no evidence, no expert testimony, and no
epidemiological data that would prove
that defendants' insecticides caused
Serrano's aplastic anemia. Nor have they
submitted evidence that defendants'
insecticides can cause aplastic anemia at
all. Plaintiffs have failed to set forth
any specific facts that show a genuine
triable issue as to the causation of
Serrano's illness.

After reviewing the record carefully in the light

most favorable to plaintiffs-appellants, we are constrained

to agree. The summary judgment is affirmed.

III.

DENIAL OF MOTION FOR RECONSIDERATION

In denying plaintiffs' motion for reconsideration

of the summary judgment, the district court stated:

On April 28, 1992, the Court granted
defendants' motions for summary judgment
on the grounds that plaintiffs had failed
to present evidence that defendants'
insecticides caused the decedent's
aplastic anemia. Plaintiffs now move
for reconsideration on the grounds that
they have obtained the services of an
expert who has stated that there may be a
link between defendants' products and
aplastic anemia.

-6-

This case was filed in November
1990. In October of 1991, the Court
granted the parties until February 5,
1992 to conclude discovery. The
defendants point out, and plaintiffs
admit as much in their motion, that they
were not noticed of this expert until
April 24, 1992, more than two months
after the discovery deadline. Discovery
deadlines are necessary for the proper
management of cases. See Thibeault v.

Square D Co., 960 F.2d 239, 247 n.7 (1st

Cir. 1992). Because plaintiffs' expert
was secured after the discovery deadline,
the Court denies the motion to reconsider
denies
based on their expert's testimony.

On appeal, plaintiffs claim that the district court abused

its discretion in denying their motion. We disagree.

The district courts are necessarily afforded

substantial discretion in ruling on motions for

reconsideration. See Mackin v. City of Boston, 969 F.2d

1273, 1279 (1st Cir. 1992), cert. denied, 61 U.S.L.W. 3314

(1993); Weinberger v. Great Northern Nekoosa Corp., 925 F.2d

518, 528 (1st Cir. 1991); see also Appeal of Sun Pipe Line

Co., 831 F.2d 22, 25 (1st Cir. 1987), cert. denied, 486 U.S.

1055 (1988). Substantial discretion, though, does not mean

unbridled discretion and a district court's decision to deny

a motion to reconsider its judgment will be reviewed for

abuse of discretion. United States v. Roberts, 978 F.2d 17,

20-21, (1st Cir. 1992); Weinberger, 925 F.2d at 528; Sun

Pipe, 831 F.2d at 25. In Roberts we reiterated how we

determine whether there has been an abuse of discretion.

-7-

In making discretionary judgments, a
district court abuses its discretion when
a relevant factor deserving of
significant weight is overlooked, or when
an improper factor is accorded
significant weight, or when the court
considers the appropriate mix of factors,
but commits a palpable error of judgment
in calibrating the decisional scales.
See Independent Oil and Chem. Workers of

Quincy, Inc. v. Procter & Gamble Mfg.

Co., 864 F.2d 927, 929 (1st Cir. 1988);

In re San Juan Dupont Plaza Hotel Fire

Litig., 859 F.2d 1007, 1019 (1st Cir.

1988); United States v. Hastings, 847

F.2d 920, 924 (1st Cir.), cert. denied,

488 U.S. 925, 109 S. Ct. 308, 102 L. Ed.
2d 327 (1988).

United States v. Roberts, 978 F.2d at 21.

The broad measure of discretion enjoyed by the

district courts in managing the litigation before it includes

the control of pre-trial discovery. Mark v. Great Atlantic &

Pacific Tea Co., Inc., 871 F.2d 179, 186 (1st Cir. 1989); In

re Recticel Foam Co., 859 F.2d 1000, 1006 (1st Cir. 1988),

(district judge is in unique position to balance all

potentially conflicting interests among the litigants and its

decisions on the scope of the discovery process are

ordinarily left to the judge's informed judgment).

The use of discovery closure dates and deadlines

for disclosure of the identities of experts are important

tools for case management. Their use, including the setting

of specific deadlines, is not only within the sound

discretion of the district court, but has been strongly urged

-8-

by us. In Thibeault v. Square D Co., 960 F.2d 239, 247 n.7

(1st Cir. 1992), we stated:

. . . [W]e urge, in the strongest
possible terms, that district courts (as,
indeed, is most frequently done in this
circuit) set pretrial deadlines for
disclosing the identities of experts. In
the same vein, we heartily endorse the
utilization of discovery closure dates,
available under Fed.R.Civ.P. 16(b)(3), as
a case management tool. After all, the
adversarial cast of our system of
justice, combined with the increasingly
complex and unwieldy nature of modern
litigation practice, frequently require
that trial courts provide strong guidance
to counsel and assume hands-on control of
the discovery process.

Plaintiffs have advanced three related reasons for

their failure to comply with the discovery deadline. They

argue first that defendant made it difficult for them to

determine the chemical ingredients in its

pesticide Gramaxone. This difficulty was compounded,

plaintiffs claim, by the court's pretrial protective order

that precluded the use of an expert by plaintiffs that was

associated with the manufacturing of pesticides.2 Both of

these factors, according to plaintiffs, combined to make

obtaining an expert a difficult and slow process. Plaintiffs

assert that the court was informed of this problem at a

2 The protective order was issued to protect the trade
secrets pertaining to some of the other defendants'
pesticides, but did not pertain to ICI.

-9-

pretrial conference on February 20, 1992. This was after

discovery had closed.

Plaintiffs eventually obtained the services of an

expert, Dr. Padovani, a university professor at the

University of Puerto Rico, Magaguez Campus. It is not clear

from plaintiffs' motion for reconsideration when the expert

was retained, but it can be fairly inferred that it was after

the discovery closure date of February 5, 1992. According to

plaintiffs' motion for reconsideration:

As a result of extensive research,
Dr. Padovani was also of the opinion that
Paraquat exposure had led to the onset of
aplastic anemia. In support of that
opinion, plaintiffs submitted to
defendant ICI fruits of their
investigation which established a causal
link and consisted of scientific
publications entitled Paraquat

Intoxication and Isolated Aplastic

Anemia, and Isolated Aplastic Anemia

After Paraquat Poisoning.3

This information was disclosed to defense counsel

on April 24, 1992, more than two months after the cut-off

date for pretrial discovery.

Plaintiffs' reasons for failure to meet the

discovery schedule fell far short of showing an abuse of

discretion by the district court. The deadlines imposed gave

plaintiffs more than a year from the filing of the complaint

to obtain the services of an expert witness. Counsel for

3 Paraquat is one of the ingredients in Gramaxone, the
pesticide manufactured by defendant, ICI Americas, Inc.

-10-

plaintiffs knew or should have known at the time the

complaint was drawn that only expert testimony could

establish a causal link between defendant's pesticide and

Carlos Serrano's illness and death. Some preliminary

spadework should have been done before the complaint was

filed. We do not think the discovery schedule was

unreasonably short.

In a pretrial order issued February 20, 1992, which

plaintiffs signed, the court listed as an "uncontested

material fact" that the plaintiffs had not proffered any

competent expert testimony showing that any of the

defendants' products, to which exposure was alleged, caused

the aplastic anemia. By this time, trial had already been

set for March 11, 1992. Defendants and the district court

were noticed of plaintiffs' proposed expert witness on April

24, 1992 two months after the discovery deadline and less

than one month prior to the start of the trial.

Were we to find that the district court abused its

discretion in denying the motion for reconsideration, we

would be flouting our own precedent, abdicating our

supervisory responsibility, and turning over the control of

discovery to the lawyers. The district court's order on the
The district court's order on the

motion for reconsideration is affirmed.

Costs on appeal are awarded to appellee.

-11-